# WASHINGTON RAILWAY & ELECTRIC COMPANY v. CLARK.

CARRIERS; ESTOPPEL; INSTRUCTIONS TO JURY; NEGLIGENCE; SPEED REGU-
LATION; WITNESSES; EXPERTS.

1. Where, in an action against a railway company to recover for the
   death of the plaintiff's intestate, who was killed by a car of the
   defendant which was approaching a station consisting of a cinder
   platform, one of the approaches to which was over a cinder walk
   crossing the tracks, a prayer for instruction asked by the defendant
   and granted was to the effect that if the decedent when killed was
   crossing the tracks at a point other than the cinder walk he was not
   a passenger and the only duty owed by the defendant to him was
   that which it owed to the ordinary traveler upon the highway, the
   defendant is estopped to claim on appeal that the court erred in
   charging the jury that if the decedent was on the walk he was a
   passenger; and it was not reversible error for the court to reject
   other prayers asked by the defendant, which were to the effect that
   while the decedent was crossing the tracks he was not a passenger
   and that if he was struck while crossing the tracks at a point other
   than the walk he was a trespasser and the only duty the defendant
   owed him was not to wantonly inflict injury upon him.

2. A municipal regulation prohibiting the operation of railway cars at a
   speed in excess of 20 miles an hour is prohibitive, and not permissive,
   so that in an action against a railway company for the killing by
   one of its cars of a person on its tracks it is not error for the trial
   court to refuse an instruction asked by the defendant, to the effect
   that it was allowed to operate its car at a rate of speed not in excess
   of 20 miles an hour and that it was not negligence on its part to
   operate its car at any speed not in excess of 20 miles an hour.

3. In an action against a railway company for the death of a person killed
   at a crossing, where there is no evidence as to whether the decedent
   saw the approaching car, but there is evidence that its headlight

Note.—On operating street car at speed in excess of that prescribed by
ordinance as negligence or evidence of negligence, see note in 8 L.R.A.
(N.S.) 1093.

On the question of evidence as to street cars, see note in 34 L.R.A.(N.S.)
784.

was on, it is not error for the trial court to grant a prayer for instruction by the plaintiff to the effect that as a matter of law the plaintiff's intestate, when about to cross the defendant's tracks, in the absence of circumstances sufficient to indicate the contrary, had the right to assume that the defendant's approaching car was not exceeding, and would not exceed, the lawful speed. (Following *Capital Traction Co.* v. *Apple*, 34 App. D. C. 559.)

4. Whether a witness is qualified to testify as an expert is largely within the discretion of the trial court. (Following *Lansburgh* v. *Wimsatt*, 7 App. D. C. 271.)

5. A traction engineer by profession, who has been connected with various electric street railway companies, having seen service as vice-president and manager of one company for five years, and who has built electric railway lines and is familiar with construction of electric cars, is qualified to testify as an expert as to the distance within which an electric car can be stopped, running at various rates of speed.

No. 2956.  Submitted December 7, 1916.  Decided February 5, 1917.

HEARING on an appeal by the defendant from a judgment of the Supreme Court of the District of Columbia, on verdict, in an action to recover damages for the death of the plaintiff's intestate.                                *Affirmed.*

The Court in the opinion stated the facts as follows:

This suit was brought by appellee, Mina L. Clark, administratrix of estate of George W. Clark, hereafter referred to as plaintiff, to recover damages against defendant railway company, Washington Railway & Electric Company, for injuries sustained by her husband, resulting in his death, through the alleged negligence of defendant.

It appears that the accident occurred about 8:55 o'clock on the night of December 25, 1913, while plaintiff's decedent, Clark, was in the act of crossing defendant's tracks at a point near the intersection of Bennings Road and Nineteenth street, northeast, in this District. The double-track line of defendant's road extends on a private right of way immediately adjacent to and North of Bennings Road, and parallel thereto. A short

distance east of the Nineteenth street intersection is a station for receiving and discharging passengers, consisting of a cinder platform extending along the north side of the north or westbound track for a distance of 47 feet, with an average width of about 7 feet. Crossing the track at right angles to the platform is a cinder walk or path, for the accommodation of persons crossing the track from the street to the platform.

At the southwest corner of Nineteenth street and Bennings Road is situated a lamp-post, distant 92 feet from the west and of the cinder platform and north 94 feet from the drug store of the principal witness, Jones. From the door of the drug store, which faces west on Nineteenth street, the surroundings, including the lamp-post, cinder path, platform, and tracks for less than 100 feet east of the path, may be observed. Clark left the Jones drug store shortly before the accident. Jones stepped to the door, as he testifies, to observe the condition of the weather. In his examination in chief, as to what he observed from the drug store door, he testified, as stated in the record, as follows: "Witness was standing in the door and saw Mr. Clark standing on the Nineteenth and Benning Road, right near the lamp-post. Saw the man go towards platform to take car which was approaching, and all at once he suddenly disappeared; witness did not see him any more. * * * He went over in the direction of the platform. When witness last saw him he was in the center of the track, and had crossed over, and seemed to be about at place indicated. When witness first observed him, did not see car. Saw car coming after he saw man standing at lamp-post. When witness first saw car it was somewhere up the track, as far as witness could see, around the schoolhouse. Car had headlight on it. Guesses car was running 30 miles an hour or more, and was coming down grade, running very fast. Witness did not notice whether it slacked up when it reached the station or platform; did not see." On cross-examination Jones testified as follows: "Knows the gravel walk across the tracks; Clark was making toward the gravel walk; he was on the gravel walk, because it ends up here; it is all between the tracks. When witness first saw the car the man was on the

south rail of the east-bound track. At that time the car was somewhere up the track, as far as witness could see, it was going 30 miles an hour. The man was making towards the gravel walk. Noticed the car when it got to the point where it passed the platform. It was then going very rapid. Did not seem to slack up very much."

The motorman on the car at the time of the accident, called as a witness for the plaintiff, and the only other witness besides Jones who pretends to know anything as to how the accident happened, testified on his examination in chief as follows: "On the night of the accident the man who was killed was about 20 feet in front of the car, when witness first saw him; he was not in front of car, he was running north across the east-bound track. He cut across in front of witness's car. When witness first observed him he was about 20 feet away, not in front of witness, not directly in front of him, but running north. After the accident the car ran about two lengths, and stopped. After the car stopped witness got off and went back. Found man lying in gutter with face down; water was in the gutter. * * * The condition that night of the weather was that it had been raining very hard the early part of the night, and at the time of the accident it was a kind of rainy, smoky, misty night." On cross-examination he testified as follows: "At the time witness first saw the man he was running north across the east-bound track about 20 feet in front of witness; witness's car was then running 12 miles an hour. Where he was running he could not get to the platform; he was about 15 feet west of the platform. He got all the way across the west-bound track, and was struck by the north side of the front of the vestibule. Just to the north of where he was struck is a gutter. Witness knows where the walkway is for passengers to cross from the south side to the cinder platform; this man did not cross there. At the time witness first saw the man he rang the gong for him crossing, and went down on the brakes, and tried to stop the car. After the car stopped witness and his conductor went back and there was no one else there."

*Mr. George P. Hoover* for the appellant in his brief cited:

*Boring* v. *Metropolitan Street R. Co.* 194 Mo. 552; *Barry* v. *Second Ave. R. Co.* 20 N. Y. Supp. 871; *Bliss* v. *Un. Tr. Co.* 78 N. Y. Supp. 19; *Barrett* v. *Col. R. Co.* 20 App. D. C. 381; *Chunn* v. *C. & S. R. Co.* 207 U. S. 302; *C. & E. I. R. R.* v. *Jennings,* 190 Ill. 483; *Cap. Tr. Co.* v. *Contner,* 120 Md. 82; *C. & S. R. Co.* v. *Cooper,* 32 App. D. C. 557; *Dixon* v. *G. F. & O. D. R. Co.* 38 App. D. C. 591; *Duchemin* v. *Bost. El. R. Co.* 186 Mass. 356; *Deatrick* v. *L. E. & W. R. Co.* 164 Ill. App. 36; *Edgerton* v. *B. & O. R. Co.* 6 App. D. C. 516; *Farley* v. *Cin. H. & D. R. Co.* 108 Fed. 16; *G. F. & O. D. R. Co.* v. *Hammerly,* 40 App. D. C. 196; *Gourley* v. *St. L. & S. R. Co.* 35 Mo. App. 94; *Geist* v. *Det. City R. Co.* 91 Mich. 449; *Garvick* v. *Un. R. Co.* 101 Md. 239; *Hicks* v. *Un. P. R. Co.* 76 Neb. 498; *Harten* v. *Brightwood R. Co.* 18 App. D. C. 260; *Igo* v. *C. & A. R. Co.* 38 Mo. App. 380; *June* v. *B. & A. R. Co.* 153 Mass. 81; *Jones* v. *B. M. R. Co.* 163 Mass. 245; *Legge* v. *New York, N. H. & H. R. Co.* 197 Mass. 89; *McNab* v. *Un. R. Co.* 94 Md. 729; *Mammerberg* v. *Metropolitan Street R. Co.* 60 Mo. App. 563; *N. & P. Tr. Co.* v. *Ellington,* 108 Va. 251; *Nor. Pac. R. Co.* v. *Freeman,* 174 U. S. 379, 384; *O'Donnell* v. *C. & N. R. Co.* 106 Ill. App. 291; *Southern R. Co.* v. *Smith,* 86 Fed. 293; *Smith* v. *K. L. & P. Co.* 175 Ill. App. 359; *Southern R. Co.* v. *Gray,* 241 U. S. 339, 353; *Stearman* v. *B. & O. R. Co.* 6 App. D. C. 46; *Warner* v. *B. & O. R. Co.* 168 U. S. 339; *Webster* v. *Fitchburg R. Co.* 161 Mass. 299; 2 Hutchinson, Carr. sec. 1006; 2 Moore, Carr. pp. 972, 980; 8 Thomp. Neg. (White's Supp.) sec. 2633.

*Mr. Wilton J. Lambert, Mr. George L. Whitford,* and *Mr. Rudolph H. Yeatman,* for the appellee in their brief cited:

*Allender* v. *C. R. I. & P. R. Co.* 37 Iowa, 264; *Birmingham R. Light & P. Co.* v. *Hayes,* 153 Ala. 178; *C. & E. I. R. Co.* v. *Chancellor,* 60 Ill. App. 525; *C. & E. R. I. R. Co.* v. *Jennings,* 190 Ill. 478; *C. & A. R. Co.* v. *Wilson,* 63 Ill. 167; *Capital Traction Co.* v. *King,* 44 App. D. C. 315; *Capital Traction Co.*

v. *Apple,* 34 App. D. C. 559; *Capital Traction Co.* v. *Lusby,* 12 App. D. C. 295; *Chunn* v. *City & Subur. R. Co.* 207 U. S. 302; *Deatrick* v. *L. E. & W. P. Rd.* 164 Ill. App. 34; *Dieckmann* v. *C. & N. W. R. Co.* (Iowa) 121 N. W. 676; *Dixon* v. *G. F. & O. D. R. Co.* 38 App. D. C. 594; *Ducheminn* v. *Boston El. R. Co.* 186 Mass. 353; *Farley* v. *Cin. H. D. R. Co.* 108 Fed. 14; *G. C. & S. F. R. Co.* v. *Glenk,* 9 Tex. Civ. App. 599; *Hicks* v. *U. P. R. Co.* 76 Neb. 496; *Jewett* v. *Klein,* 7 N. J. Eq. 550; *Jones* v. *Boston & M. R. Co.* 163 Mass. 245; *June* v. *B. & A. R. Co.* 153 Mass. 79; *Lansburgh* v. *Wimsatt,* 7 App. D. C. 271; *Legge* v. *N. Y., N. H. & H. R. Co.* 197 Mass. 88; *Manufacturing Co.* v. *Phelps,* 130 U. S. 520; *O'Donnell* v. *C. & N. W. R. Co.* 106 Ill. App. 496; *P., B. & W. R. Co.* v. *Anderson,* 72 Mo. 519; *Southern R. Co.* v. *Smith,* 86 Fed. 292; *Shannon* v. *B. & A. R. Co.* 78 Me. 52; *Terry* v. *Jewett,* 78 N. Y. 338; *Warner* v. *B. & O. R. Co.* 168 U. S. 339; *W. & O. D. R. Co.* v. *Slyder,* 43 App. D. C. 95; *W. & O. D. R. Co.* v. *Hammerly,* 44 App. D. C. 196; *Wash., A. & M. V. R. Co.* v. *Fincham,* 44 App. D. C. 412; *Washington Utilities Co.* v. *Wadley,* 44 App. D. C. 176; *Washington-Virginia R. Co.* v. *Himelright,* 42 App. D. C. 532, 542; *Webster* v. *Fitchburg R. Co.* 161 Mass. 298; 4 R. C. L. Sec. 663, pp. 1252, 1253.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

The court below, on the question of whether or not Clark and defendant stood in the relation of passenger and carrier at the time of the accident, instructed the jury as follows: "This railroad, it appears, is on a private right of way. Both tracks are upon that right of way, and not upon the highway itself; and it seems that a place is prepared there for those who wish to become passengers to cross, to come upon the railroad property, and take the car; and of course they have a right to expect that passengers will use that place, and will not come by other and unusual routes; and unless there is something to indicate that a person is coming in some other way the motorman is not bound to anticipate that he will. He will naturally look for them at

the place prepared. If this man was crossing practically at the place prepared for him, then he was going there in the place that the company had invited him to come in if he wanted to be a passenger. If he was outside of that, crossing at some other substantially different place, then the rule would be different. The road would not be bound to exercise the same degree of care and diligence toward a trespasser upon its tracks that it would be bound to exercise in reference to a person who was coming in the place where they had asked him to come. In the latter place a higher degree of care is required, because the man is responding to their invitation. It is a question of fact for you to determine, where this man was at the time just before he was struck. If he was not exactly on the cinder pathway across the tracks, but was very near to it, making for the cinder platform, almost upon it, and apparently, to the motorman, was going to the platform, and was almost upon it, I think in law you should treat it as practically the same as if he were upon it. That is, the company would be bound at least to exercise reasonable diligence toward him, to see that he was not run upon; and if he was on the platform or the roadway prepared for him to come upon, then it was bound to exercise the duty which it does toward a passenger, or one who is accepting the invitation of the company to be a passenger and upon its land in the place which they have invited him to come to."

In order to determine whether reversible error was committed in giving this instruction, it is essential to inquire into the hypothesis upon which the case was tried. True, plaintiff in the fourth amended count of the declaration alleged that Clark occupied the relation of a passenger to defendant company at the time of the accident, and that defendant owed him the same high degree of care due a passenger. But this theory seems to have been wholly abandoned by counsel for plaintiff. At most, plaintiff could only recover on the case proved. A review of the testimony of the witness Jones in chief and of the motorman Macaboy discloses no premise upon which the relation of carrier and passenger could be based. There was nothing in this testimony which placed Clark near the cinder walk at the

time of the accident.   If the evidence had closed at this point, it is doubtful if Clark could have been held to be other than a trespasser upon the tracks of the defendant at the time of the accident.   But counsel for defendant, in the cross-examination of Jones, placed Clark on the walk at the time of the accident. Counsel for plaintiff, apparently appreciating the extremely doubtful sufficiency of this evidence to establish the relation of passenger and carrier, made no effort to bring that question into the case.   No attempt was made to elaborate the evidence on this point, and it is not suggested in the prayers offered on behalf of plaintiff.   Indeed, in so far as the plaintiff's case is concerned, this issue was abandoned.

It remained, however, for counsel for defendant to inject it into the case.   Its prayer 13, granted by the court, is as follows: "If the jury find from the whole evidence in the case that at the time plaintiff's intestate was struck by the car of the defendant he was crossing the track at a point other than at the walkway for persons to cross to the cinder platform upon the north side of the track, then they are instructed that the relation of passenger and carrier did not exist between plaintiff's intestate and the defendant at the time of the accident, and that the only duty owed by the defendant to the plaintiff's intestate was that which is owed to the ordinary traveler upon the highway, and that while in the act of crossing the track of the defendant it was the duty of the plaintiff's intestate to exercise reasonable care in keeping a lookout for approaching cars."   But one inference can be drawn from this language; namely, that if Clark was on the cinder walk when the accident occurred, the relation of passenger and carrier did exist.   Having invented this theory of the case, and induced the court to grant its prayer 13, defendant is now estopped to complain because the court presented to the jury in the general charge the same thought couched in different language.

Counsel's objection to the charge of the court was not directed to that portion of the instruction where the court charged that if Clark was near the walk he was in a position where the agents of the company should be on the lookout for people to

be, and "that the company would be bound at least to exercise reasonable diligence toward him, to see that he was not run upon." The objection to the instruction interposed at the trial made no reference to the language, in so far as it related to the duty of the company if Clark was near the crosswalk or platform when injured. It was as follows: "I also except to that part of your Honor's charge where your Honor stated to the jury that if they found in this case that the plaintiff was crossing the walkway and going to the platform, that while he was crossing the walkway he was a passenger of the defendant, and entitled to the highest degree of care." The exception was limited to that portion of the instruction where the court stated that if the jury found that plaintiff's intestate "was on the platform or the roadway prepared for him to come upon, then it was bound to exercise the duty which it does toward a passenger, or one who is accepting the invitation of the company to be a passenger, and upon its land in the place which they have invited him to come to." The language used by the court was a logical statement of the only reasonable implication to be drawn from prayer 13. As suggested, it is unnecessary, assuming that Clark was on the walk when struck, to decide whether, as matter of law, the relation of passenger and carrier existed, since the issue was brought into the case by defendant, and not referred to by plaintiff. If the court erred, the error is not chargeable to plaintiff, but to the adoption of defendant's theory of the case. It follows, therefore, that defendant is not now in position to complain.

Exception was taken by counsel for defendant to the refusal of the court to grant prayer 5, which reads as follows: "The jury are instructed, as matter of law, while plaintiff's intestate was in the act of crossing the tracks, the relation of passenger and carrier did not exist between plaintiff's intestate and the defendant, and that the only duty owing by the defendant to the plaintiff's intestate was that which it owed to the ordinary traveler upon the highway, and while in the act of crossing the tracks of the defendant it was the duty of plaintiff's intestate to exercise reasonable care in keeping a lookout for approach-

ing cars." It will be observed that as to the relation of passenger and carrier, this prayer is in direct conflict with prayer 13; and as to the general duty imposed by this prayer upon the carrier at points other than the walk, it is the same as that imposed by prayer 13.

The same objection applied to prayer 6, where counsel asked the court to instruct the jury that if they found that Clark was struck while crossing the tracks at a point other than the walkway, he was a trespasser upon the tracks, and the only duty due him was not to wantonly inflict injury upon him. This was in conflict with prayer 13, which imposed upon defendant the duty due persons on the highway, if Clark was struck at a point other than on the walk. Prayer 6 is also in conflict with prayer 5. These conflicting prayers presented a confusing situation for the court, and counsel cannot complain if the court failed to select the one most favorable to his present contention.

Exception is taken to the refusal of the court to grant defendant prayer 7, which reads as follows: "The jury are instructed that under the regulations in force at the time of the accident defendant was allowed to operate the car at a rate of speed not in excess of 20 miles an hour, and that it was not negligence on the part of the defendant to operate its car at any speed not in excess of 20 miles per hour." The court properly instructed the jury that the regulation is prohibitive, and not permissive. The regulation prohibits a greater rate of speed than 20 miles an hour, but by no means relieves the company from negligence when running at a less speed. The question of negligence, considered in relation to the regulation, is comparative. While 20 miles an hour, the maximum allowed by the regulation, might not be negligent or dangerous on a clear, well-constructed track between stations, it might be exceedingly negligent to operate cars at that rate past stations or across public highways. These speed regulations, as applied to common carriers, are for the protection of the public,—those in the cars, as well as those outside. It would hardly be contended that the regulation would operate as a shield against the charge of

negligence if a car were wrecked and passengers injured while running over a dangerous piece of track at a less rate than 20 miles per hour. Why should a different rule apply to the public inside the car than on the outside? The act of negligence in each instance depends upon the circumstances, which raises a question of fact for the jury.

Objection was made to the granting of plaintiff's prayer 4, which reads as follows: "The jury are instructed as matter of law that plaintiff's intestate, when about to cross the defendant's tracks, in the absence of circumstances sufficient to indicate the contrary, had the right to assume that the defendant's approaching car was not exceeding, and would not exceed, the lawful speed." It is urged that there is no evidence that Clark saw the car approaching. This was a reasonable and just inference which the jury might draw from the circumstances. The undisputed evidence is that Clark was advancing toward the car, meeting it, and that the car was approaching with headlight on, where it could be plainly observed. Indeed, the jury could hardly infer otherwise than that he must have seen it. This instruction was drawn in conformity to the rule announced in *Capital Traction Co.* v. *Apple*, 34 App. D. C. 559, where the court said: "One about to cross a street car track, in the absence of circumstances sufficient to indicate the contrary at least, has the right to assume that it [an approaching car] is not exceeding, and will not exceed, the rate of speed limited by the municipal ordinances."

Objection was made by counsel for defendant to the admissibility of the testimony of a witness on behalf of plaintiff who was introduced as an expert to testify as to the distance within which a car could be stopped, running at the various rates of speed at which the witnesses estimated the car was running when the accident occurred. It is urged that it does not sufficiently appear that this witness was qualified to testify as an expert. The determination of this question is one largely within the discretion of the trial court, and will not usually be disturbed unless manifest error has been committed. "Whether a witness called to testify to any matter of opinion has such quali-

fications and knowledge as to make his testimony admissible is a preliminary question for the judge presiding at the trial; and his decision of it is conclusive, unless clearly shown to be erroneous in matter of law." *Stillwell & B. Mfg. Co.* v. *Phelps,* 130 U. S. 520, 32 L. ed. 1035, 9 Sup. Ct. Rep. 601. A similar rule was announced by this court in *Lansburgh* v. *Wimsatt,* 7 App. D. C. 271.

We think, however, it sufficiently appears that the witness did possess qualifications to testify as an expert on this point. He was a traction engineer by profession, and had been connected with various electric street railway companies, having seen service as vice president and manager of one company for five years, had built electric railway lines, and was familiar with the construction of electric cars. These facts, taken in connection with his evidence as detailed in the record, we think fully qualified him to testify as an expert in relation to the subject upon which he was interrogated.

The remaining questions are unimportant and will not be considered. The judgment is affirmed, with costs.    *Affirmed.*