**POLLARD et al. v. HAWFIELD et al.**

No. 9635.

United States Court of Appeals
District of Columbia Circuit.

Argued May 12, 1948.

Decided Sept. 20, 1948.

Mr. Luther Robinson Maddox, of Washington, D. C., for appellants.

Mr. Albert Brick, of Washington, D. C., for appellees.

Before CLARK and WILBUR K. MILLER, Circuit Judges, and CURRAN, District Judge, sitting by designation.

CLARK, Circuit Judge.

This is an appeal by caveators from a judgment of the District Court admitting to probate and record as the last will of Mary Elizabeth Ellyson, a paper dated April 14, 1944.

The testatrix died on January 7, 1946, at the age of 86. She had never married, and her only heirs and next of kin were the children and grandchildren (including appellants) of her several deceased brothers and sisters. In 1932, the testatrix engaged Mabel Adams as her housekeeper. Mabel Adams remained in that capacity until March 20, 1944, when she was discharged by Mrs. Florence O. Metz, a niece of the testatrix and one of present appellees. In 1940, testatrix suffered a paralytic stroke and thereafter remained bedridden and partially paralyzed until her death. In 1941, Nurse Scott, a graduate nurse and one of appellees, came into the household of the testatrix and attended the testatrix until she died. Another nurse, Mattie Edwards, also so attended the testatrix for a period of about five weeks commencing on March 18, 1944. It is apparent from the record that the testatrix became ill in March of 1944 and hence Nurse Edwards was called in to aid Nurse Scott. The cause of this illness was not established at the trial—appellants claim testatrix had pneumonia, but appellees assert that she had a "deep cold" or a "bronchial cold." It is clear, however, that the testatrix had sufficiently recovered from this illness by the latter part of April, 1944, so as to no longer require the services

of the extra nurse. The contested will was signed by the testatrix on April 14, 1944.

Testatrix had executed, in 1931 and 1932, two wills, both of which named as legatees the descendants of her several deceased brothers and sisters. A codicil (executed in 1939) to the 1932 will added Housekeeper Adams as a legatee. These three documents were introduced in evidence along with a purported will dated July 14, 1941, which was in the same phraseology as the prior wills but which also contained a specific bequest to the housekeeper and a share in the residuary estate. In all of these, the National Savings and Trust Company of Washington was named executor.

In the contested will, the attending physician of testatrix, appellee Hawfield, is named executor. In this latest will the legatees are reduced from about eight heirs and next of kin to three. Housekeeper Adams is not mentioned therein, and Nurse Scott is named a beneficiary.

On March 26, 1946, Dr. Hawfield filed in the District Court a petition for probate of the 1944 will. Thereafter, Housekeeper Adams filed a caveat resisting probate of that will and asking that issues be framed for a jury trial. By subsequent order of the District Court all of present appellants were allowed to join in and adopt the Adams caveat. The case then proceeded to jury trial below, the following four issues having been framed: (1) Was the paper writing dated April 14, 1944, the last will and testament of Mary Elizabeth Ellyson, deceased; (2) was Mary Elizabeth Ellyson at the time of the making and subscribing or of the acknowledging by her of the said paper writing of sound and disposing mind and capable of executing a valid will; (3) was the said paper writing obtained, or the execution thereof, or the subscription thereto procured from Mary Elizabeth Ellyson by fraud or deceit practiced upon her by Nurse Scott, Mrs. Metz, or any other person or persons; and (4) was the said paper writing obtained, or the execution thereof procured from Mary Elizabeth Ellyson by the undue influence or duress, or coercion of Nurse Scott or any other person or persons? At the conclusion of the trial the first two issues were answered by the jury in the affirmative, the third and fourth in the negative. The answer to the third (as to fraud or deceit) was directed by the court. Accordingly, the trial judge ordered that the contested will be admitted to probate and directed the issuance of letters testamentary to Dr. Hawfield. From this action appellants (caveators) have appealed. It is interesting to note that, for some unexplained reason Housekeeper Adams, the original caveator, is not a party to this appeal.

■■ Appellants first contend that the trial judge erroneously denied two requested prayers on the presumption of undue influence and on testamentary capacity. We do not agree with that contention. Examination of these prayers and comparison with the charge as given by the trial judge reveal no error in the charge as to the law on undue influence and testamentary capacity. Even conceding without deciding that the prayers submitted by appellants and denied by the trial judge correctly stated the law as to undue influence and testamentary capacity, it was not error to deny them where, as here, the ultimate charge properly informed the jury as to the law.[1] Further, it does not appear from the record that any exceptions to the charge as given on these points were asserted in the trial court and they therefore may not now be urged before this court.

■ In their argument for reversal, appellant caveators next assert that the direction of a verdict in favor of caveatees on the third issue (fraud and deceit) was erroneous. While it is true, as this court has said many times and as appellants now say, that "a motion to direct a verdict against the plaintiff is an admission of every fact in evidence tending to sustain his case and of every inference reasonably deducible therefrom, and that the motion can be granted only when but one reasonable view can be taken of the evidence and the conclusions therefrom, and that view is utterly

---

[1] McCartney et al. v. Holmquist, 1939, 70 App.D.C. 334, 106 F.2d 855, 126 A.L.R. 375, and cases cited therein.

opposed to the plaintiff's right to recover," [2] yet in the instant case the trial judge has decided and we agree, after consideration of all of the portions of the evidence called to our attention by appellants, that there was no evidence of fraud sufficient to justify submission of that issue to the jury. From the evidence submitted, no reasonable juror could have found otherwise than that there was no fraud exercised by any of appellees. Taking this view of the record before us, the trial judge properly directed the verdict on the third issue. In fact, the submission of that issue to the jury without some evidence of fraud would itself have been error.

Appellants next aver that the trial judge erred and abused his discretion in limiting the testimony of Dr. Luther H. Snyder, alleged expert witness for caveators. In District of Columbia v. Chessin, 1932, 61 App.D.C. 260, 61 F.2d 523, 525, this court said that "the qualification of an expert witness, that is to say, his knowledge, skill, and experience, to express an opinion on a particular matter in issue is a question for the trial court, and the exercise of this discretion will not ordinarily be disturbed by an appellate court." [3] This is a salutary rule. In the instant case, Dr. Snyder took the stand and testified generally as to his qualifications as a physician, including statements that he had practiced medicine for twelve years, that he had attended patients suffering from paralysis, and that his specialty is internal medicine. Upon objection of caveatees' counsel to the qualifications of the witness as an expert, a bench conference was held wherein the trial judge expressed doubt as to the qualifications of the witness to give expert testimony as to mental capacity in answer to a proposed hypothetical question and asked counsel for caveators if he could give any legal authority for the proposition that such a witness was a qualified expert. Counsel for caveators offered no such authority, whereupon the trial judge stated that the witness may testify as to the paralysis but that his testimony as to the effect of paralysis on the mental faculties would be excluded. The witness was then excused. It does not appear anywhere in the record that Dr. Snyder had any experience or training in mental illnesses and disorders. Nor does it appear that he had ever treated or observed any paralytic case which had resulted in the impairment of the mind of a patient. Dr. Snyder's proposed testimony admittedly would not have been based upon any experience with or examination of the deceased testatrix, but rather he would have been called upon to form an opinion based upon asserted facts contained in the proposed hypothetical question. There is little or no evidence in the record before us to indicate that either the partial paralysis of the testatrix with its resultant confinement or her advanced age had caused any impairment of her mind. In these circumstances we cannot say that the trial judge abused his discretion in thus limiting the testimony of Dr. Snyder.

Another of appellants' claims is that the trial judge misled and confused the jury by his inadequate and partially ambiguous charge. As we have indicated above, we believe the charge properly instructed the jury as to the law. But appellants, through their counsel, complain that the charge was "couched in terms proper for a legal opinion perhaps, but certainly not likely to make clear to every layman on the jury, of various degrees of intelligence and education, the principles of law by which they must be governed in arriving at a verdict." The opposite is true. We have studied the charge as given and find that, contrary to appellants' claim, the trial judge was extraordinarily careful in instructing the jury in the most elementary language, defining in non-technical terms the legal terms involved in the case.

There have been discussed and disposed of above all of appellants' contentions which we regard as having any real substance; the others being without merit. The judgment below is therefore

Affirmed.

2 Faucett v. Bergmann et al., 1927, 57 App.D.C. 290, 291, 292, 22 F.2d 718, 719.

3 See also, Hannan et al. v. United States, 1942, 76 U.S.App.D.C. 118, 131 F.2d 441.