**OHIO VALLEY CONSTRUCTION CO., INC.,
a corporation, et al., Appellants,**

**v.**

**Willie David DEW, Appellee.**

**No. 8666.**

District of Columbia Court of Appeals.

Argued Sept. 10, 1975.

Decided March 16, 1976.

Bernard J. Harig, Washington, D.C., for appellants.

Louis Ginberg, Washington, D.C., for appellee.

Before REILLY, Chief Judge, and KERN and YEAGLEY, Associate Judges.

KERN, Associate Judge:

This appeal arises out of a multi-vehicle accident occurring on a ramp leading to the Southwest Freeway on November 5, 1969, which has since then produced three separate trials, including one mistrial. Two issues are presented for our determination: (1) whether the judge who presided over the *first* trial acted properly in vacating, some 16 months later, the judgment rendered there and (2) whether the judge who presided over the *third* trial properly admitted into evidence during its course certain testimony by an expert witness on behalf of appellee concerning visibility, sighting distances, and braking distances at the point of collision on the freeway ramp.

The convoluted procedural problem facing us requires a rather detailed explication of the facts. The evidence adduced at trial concerning the accident showed that on November 5, appellee Dew was proceeding in his car on the Southwest Freeway ramp behind an automobile driven by Raymond Wright. Wright changed lanes suddenly, causing Dew to slow down to avoid hitting Wright. Behind Dew on the ramp was a truck owned by Interstate Contracting Co., Inc. (ICC), and operated by Nathaniel Goodwin under authority of his employer, Ohio Valley Construction Co., Inc. (OVC). Inevitably, there was a collision between Wright's automobile, Dew's automobile, and the truck operated by Goodwin.

The parties' journey through the courts is even more complicated. First, on July 15, 1970, a complaint was filed in the name of Dew and his insurer, Hamilton Insurance Co. (Hamilton), against Goodwin and ICC. This action for property damages was identified as C.A. No. 13261-70, and the defendants in that case filed a third-party complaint against Wright. In April 1971, this case went to trial, resulting in a verdict and judgment by the court for Dew in the amount of $100 and for Hamilton in the amount of $1,735.38 against the defendants Goodwin and ICC. There was also a verdict in favor of third-party defendant Wright.

Some months later, and well after the filing of a praecipe indicating that the judgment had been satisfied, Dew moved to vacate that judgment.[1] Having filed a new action against some of the parties who had been defendants in No. 13261-70 to recover for personal injuries which he allegedly suffered in the accident, Dew discovered he would be faced in his personal injury action, No. 2117-72, with a defense of res judicata. The judge who had presided over trial of the property damage action held a hearing and vacated the judgment on November 22, 1972, purporting to act under Super.Ct.Civ.R. 60(b)(6).[2] The court made a finding that, despite the fact that Dew had acknowledged at the trial that he was the plaintiff and had been one of the named plaintiffs in the caption of the case, he had not been aware he was a *party* to the suit and had not authorized Hamilton to sue on his behalf.[3] Hamilton then paid back the $1,835.38 that defendants had paid in satisfaction of the judgment.

The complaint in Dew's personal injury action, No. 2117-72, was filed in March 1972, and named OVC and Wright as defendants.[4] After the judgment in No.

---

1. The praecipe was dated April 23, 1971, and the motion to vacate was filed on August 14, 1972.

2. This order was amended on December 19, 1972, to make clear that the entire judgment in No. 13261-70 was vacated as to all parties, including the third-party plaintiffs and defendant.

3. At the hearing held to determine whether to vacate the judgment, counsel for Hamilton admitted that it had no authority to sue in appellee's name, since appellee never executed an authorization. Evidence also was adduced to show that appellee had never endorsed the defendants' check and had not received his portion of the judgment, $100.

4. After Dew's motion to vacate in No. 13261-70 had been filed, Dew moved to add Hamilton as a defendant in No. 2117-72. The motion was granted and a further amended com-

13261–70 was vacated, the two actions were ordered consolidated on March 19, 1973, with No. 2117–72 to be tried by a jury and No. 13261–70 to be tried by the court.

In the first jury trial of No. 2117–72, pitting Dew against OVC and Wright, a mistrial occurred, and once more the parties went to trial. This third trial resulted in a jury verdict on March 19, 1974, in favor of Dew as against OVC for $9,000, but against Dew and in favor of Wright.[5]

## I.

We consider first appellants' argument that the action of the judge at the first trial of No. 13261–70 in vacating the judgment some sixteen months after it had been entered was improper. Appellants claim that the motion to vacate was appropriate only under Super.Ct.Civ.R. 60(b)(1), not 60(b)(6),[6] since appellee's motion to vacate the judgment was based on his mistaken or inadvertent participation in the trial of No. 13261–70. Appellants contend that this misapprehension is not the sort of extraordinary or unusual occurrence for which relief is appropriate under Rule 60(b)(6), and consequently they argue the vacation must have been granted pursuant to Rule 60(b)(1). The trial court lacks jurisdiction to entertain such a motion after one year from entry of the judgment, however, and therefore appellants urge that the order vacating the judgment be reversed and the original

judgment reinstated. *Smith v. Reese*, D. C.App., 221 A.2d 439 (1966).

■ The provision of Rule 60(b)(6) allowing a court to vacate a judgment upon motion made within a reasonable time creates "a method for granting relief beyond the time limitation in unusual and extraordinary situations justifying an exception to the overriding policy of finality." *Railway Express Agency, Inc. v. Hill*, D. C.App., 250 A.2d 923, 925 (1969), *citing* J. Moore, Federal Practice § 60.27 (2d ed. 1966). The decision to grant or deny a motion under Rule 60(b)(6) is committed to the sound discretion of the trial court judge. *Jones v. Hunt*, D.C.App., 298 A.2d 220, 221 (1972); *Tribble v. American Mutual Ins. Co.*, D.C.App., 277 A.2d 659, 661 (1971). Since courts generally favor a trial on the merits, the decision of a trial court to vacate a judgment and award a new trial should not be reversed absent a clear abuse of discretion. *See Citizens Building & Loan Ass'n v. Shepard*, D.C. App., 289 A.2d 620, 623 (1972); *cf. Jones v. Hunt, supra*, at 221.

■ The circumstances of this case are so unusual that we cannot conclude the trial court abused its discretion in granting appellee's motion to vacate pursuant to Rule 60(b)(6) rather than 60(b)(1). It was reasonable for the trial court to believe that appellee did not know he was a party to the suit for property damages, particularly since he never authorized Hamilton to sue on his behalf.[7] This situ-

---

plaint was filed in September 1972. Hamilton was later dropped as a defendant when the orginal judgment in No. 13261–70 was vacated.

5. On April 3, 1974, the same judge who had presided over the jury trial of No. 2117–72 made findings of fact and conclusions of law in No. 13261–70. Dew evidently was not a party to this action. Hamilton recovered $1,735.38 against defendants Goodwin and ICC, and judgment was entered in favor of Wright and against Goodwin and ICC on the third-party complaint.

6. Rule 60(b)(1) provides relief from a final judgment, within one year of the judgment, on grounds of "mistake, inadvertence, surprise,

or excusable neglect." The trial court specifically granted appellee's motion to vacate pursuant to Rule 60(b)(6), which allows vacation for "any other reason justifying relief from the operation of the judgment."

Appellants argue, and we agree, that Rules 60(b)(1) and 60(b)(6) are mutually exclusive, and where relief is appropriate under the former it cannot be granted under the latter. *Day v. United Sec. Corp.*, D.C. App., 272 A.2d 448 (1970).

7. The neglect of counsel for Hamilton to file appellee's claim for personal injuries, or to inform appellee of the need to make such a claim at that time, cannot be imputed to appellee since Hamilton's counsel was not representing appellee. *Cf. Citizens Building*

ation did not clearly fall within the parameters of "mistake, inadvertence, surprise, or excusable neglect," yet it is a situation that, in the interests of justice, clearly deserved relief. Furthermore, appellee acted with all due diligence in instituting his suit for personal injuries, since he filed his complaint well within the three-year statute of limitations, D.C.Code 1973, § 12–301. Hence the trial court's decision to grant relief under Rule 60(b)(6) and allow a determination of appellee's personal injury claim on its merits was not a clear abuse of discretion. *See Citizens Building & Loan Ass'n v. Shepard, supra.*

## II.

Turning to the second part of appellants' appeal, the facts are as follows. Appellee called Mr. Steven F. Stubits, a District of Columbia Highway Department Engineer, to testify as an expert witness at the trial on March 11, 1974. Stubits was found to be qualified as an expert in the area of highway design,[8] and he testified as to the design of the freeway ramp on which the accident occurred. He also testified as to visibility, sight distances on the ramp, and braking distances, based on his expert knowledge as well as his personal observations the week before trial. Stubits' calculations all were made on the basis of an automobile rather than a truck, but on cross-examination he admitted that he did not know if stopping distances were the same for a truck as for an automobile.

Appellants now urge upon us three grounds of error. First, appellants argue that expert testimony was unnecessary in the area of sighting distances, braking distances, and visibility, and that by admitting such testimony the trial court allowed the expert to usurp the factfinding function of the jury. Second, appellants claim that the court erred in allowing the expert to testi-

fy based on his personal observation of the scene of the accident. Third, appellants urge that it was improper to permit the expert to testify as to stopping distances of a car when a truck was involved in the accident. Having concluded that these arguments are without merit, we affirm the trial court's rulings.

The decision whether or not to admit expert testimony lies within the sound discretion of the trial court, and its ruling should be sustained unless "manifestly erroneous." *Congress & Empire Spring Co. v. Edgar,* 99 U.S. 645, 658, 25 L.Ed. 487 (1879); *Harvey's, Inc. v. A. C. Electric Co.,* D.C.App., 207 A.2d 660 (1965); *see Salem v. United States Lines,* 370 U.S. 31, 35, 82 S.Ct. 1119, 8 L.Ed.2d 313 (1962); *Pollard v. Hawfield,* 83 U.S.App.D.C. 374, 170 F.2d 170 (1948), *cert. denied,* 336 U.S. 909, 69 S.Ct. 514, 93 L.Ed. 1073 (1949); *Washington Ry. & Elec. Co. v. Clark,* 46 App.D.C. 88, *cert. denied,* 243 U.S. 649, 37 S.Ct. 476, 61 L.Ed. 946 (1917). This court described the test used by trial courts in determining whether expert testimony is appropriate in our decision in *Waggaman v. Forstmann,* D.C.App., 217 A.2d 310, 311 (1966):

> It is well settled in this jurisdiction that to warrant the use of expert testimony the subject dealt with must be so distinctively related to some science, profession, business or occupation as to be beyond the ken of the average layman and the witness must have such skill, knowledge or experience in that field or calling that his opinion will probably aid the trier in his search for truth.

*See also Jenkins v. United States,* 113 U.S.App.D.C. 300, 307 F.2d 637 (1962); C. McCormick, Evidence § 13 (2d ed. 1972).

The courts in this jurisdiction have upheld the admission of expert testimony on

---

*& Loan Ass'n v. Shepard, supra* at 623; *Railway Express Agency, Inc. v. Hill, supra* at 925–26.

8. After questioning the witness concerning his expertise, all parties agreed that he was qualified to testify as an expert and the court so found.

a variety of subjects similar to those at issue here. For example, in *Engle v. Stull*, 126 U.S.App.D.C. 291, 377 F.2d 930 (1967), the United States Court of Appeals for the District of Columbia Circuit affirmed the admission of expert testimony on matters including "the distance from which a one-foot wake could be observed, . . . the tendency of increased weight in the stern to make a boat 'porpoise', the relation between engine revolutions per minute and speed [and] the relatively safe position of a following boat being ahead of the wake of a leading boat." Similarly, the admission of an expert's report on his examination of a bus involved in an accident, including his conclusion that "no object on or in the bus obstructed the view of the driver," was affirmed in *W. M. & A. Transit Co. v. Radecka*, 112 U.S.App.D.C. 336, 302 F.2d 921 (1962). And in *Washington Ry. & Elec. Co. v. Clark, supra*, this court ruled that an expert was qualified to testify "as to the distance within which a [railroad] car could be stopped, running at the various rates of speed at which the witnesses estimated the car was running when the accident occurred."

In the instant case, we must reject appellants' claim that the expert testimony about braking and sighting distances on the freeway ramp was unnecessary and improper. The expert witness employed his special skills and training in computing the number of feet a driver could see in front of him from various points on the ramp, and he used a rather complicated formula involving perception time, reaction time, and braking time in determining the distance a driver would travel after braking before coming to a complete stop. We conclude that these issues, involving mathematical computations and more than a rudimentary knowledge of physics, lend themselves to clarification by experts. Even though the jury may have had some competence in estimating these distances, we hold that the trial court did not abuse its discretion in allowing the expert Stubits to testify.[9]

We also conclude that it was not improper to allow the witness Stubits to give testimony based on both his expert opinion and his personal knowledge. An expert may offer an opinion within the area of his expertise so long as it has some reasonable basis. *See Logsdon v. Baker*, 170 U.S.App.D.C. 360, 517 F.2d 174 (1975); C. McCormick, Evidence § 13 (2d ed. 1972). The basis for an expert opinion may be assumptions presented in a hypothetical question, or it may be personal knowledge of the matter in issue, for "no harm is done if the skilled witness has had personal observation." 2 J. Wigmore, Evidence, § 678 (3d ed. 1940). Firsthand knowledge of material facts is one of the most reliable bases for testimony, and we can discern no reason for excluding such evidence merely because the witness is also an expert. *See* C. McCormick, Evidence § 14 (2d ed. 1972).

Finally, we find no reversible error in the admission of Stubits' estimate of braking distances of an automobile rather than a truck. Appellants had ample opportunity to cross-examine the witness on this issue, and in fact did elicit several admissions from Stubits favorable to their case. As a result of this questioning the jury clearly was made aware of the fact that Stubits' estimates applied to an automobile rather than a truck, and thus were free to accept or reject the "automobile" estimates in the analogous situation involving a truck. Furthermore, appellants did not object to this testimony during the trial, and

9. Although the federal rules are not specifically applicable to the District of Columbia Courts, we note that Rule 702 of the *Federal Rules of Evidence* provides:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

it cannot be considered for the first time on appeal. *ABCD Corp. v. Henry*, D.C. Mun.App., 109 A.2d 133 (1954); *Donovan v. Brown*, 75 U.S.App.D.C. 93, 124 F.2d 295 (1941).

Accordingly, the judgment is affirmed.

*So ordered.*