644 A.2d 1363 (1994)
In the Matter of M.F. & V.H., J.F., Appellant.
Nos. 92-FS-429, 92-FS-454, 93-FS-846 and 93-FS-852.
District of Columbia Court of Appeals.
Submitted June 21, 1994.
Decided July 21, 1994.
*1364 Thomas C. Devlin, Washington, DC, appointed by this court, for appellant.
Sam. W. Burgan, Washington, DC, appointed by this court, for appellees.
Before TERRY, SCHWELB, and KING, Associate Judges.
SCHWELB, Associate Judge:

I.
On March 9, 1992, the trial court entered orders terminating the parental rights of J.F. (the mother) with regard to her daughter V.H. (now eleven years old) and her son M.F. (now nine). The orders were entered after the mother, who was involved with unlawful drugs, and who had previously stipulated to a finding that she had neglected the children,[1] failed to follow through on referrals for drug treatment and for other services designed to enable her to gain parenting skills sufficient to warrant reunification of the family.[2] The mother filed timely appeals from these orders. See Nos. 92-FS-429 and 92-FS-454.
On March 22, 1993, during the pendency of these appeals, the mother filed a motion in the trial court requesting that the orders terminating parental rights (TPR's) be vacated. She claimed that there had been a material change of circumstances since her parental rights were terminated in that it had become most improbable that either child would be adopted. The mother asked for an evidentiary hearing. On June 15, 1993, following a hearing at which the judge entertained arguments of counsel but took no testimony, the judge denied the motion. The mother again appealed. See Nos. 93-FS-846 and 93-FS-852. The two sets of appeals have been consolidated in this court.

II.
In her appellate brief, the mother has apparently abandoned her appeal from the original TPR's. Her single contention, as reflected in her sole argument heading, is that
[t]hat trial court should have set aside the order terminating mother's parental rights based on subsequent developments indicating virtually no chance of adoption for M.F. and substantially decreased likelihood of adoption of V.H.
In her brief, the mother has summarized these subsequent developments as follows:

*1365 The circumstances of both children changed considerably after [the mother's] parental rights were terminated. [The paternal grandmother] has withdrawn her adoption petition and has apparently decided against adoption of [the son] for religious and financial reasons. She cannot divorce her husband because she is a Seventh Day Adventist and divorce is forbidden by her religion. The law will not allow her to adopt without her husband's agreement. Moreover, she has also expressed some concern about the loss of services and financial help for [the son] if the neglect case is ended. Despite these problems, [the paternal grandmother] is willing to provide a home for [the son] until he becomes an adult. No one has ever suggested that he be moved from that home.
The [daughter's foster parents] decided once again that they wanted to adopt [the daughter] and filed an adoption petition to that effect. [The daughter's] behavioral problems caused them to change their minds again. They withdrew their petition and have no plans to adopt her at the present time.
The mother has failed to identify, either in this court or in the court below, any specific provision in the Superior Court's rules which would authorize that court to set aside a TPR more than a year after it was issued (or, indeed, at any time). In civil proceedings, the court may order a new trial on the basis of newly discovered evidence, see Super.Ct.Civ.R. 60(b)(2), or for any other reason justifying relief from the operation of the judgment, see Super.Ct.Civ.R. 60(b)(6). Civil Rule 60, however, does not apply to neglect proceedings. See Super.Ct.Neglect R. 1(b) (enumerating Civil Rules applicable in neglect cases and excluding Rule 60). Moreover, Rule 26(c) of the Superior Court's Neglect Rules, which deals with neglect reviews following termination of parental rights, authorizes the court to take various steps to enhance the possibility of adoption, but contains no provision authorizing the vacation of a TPR.
Assuming, without deciding, that a person whose parental rights have been terminated, and who is legally a stranger to the child, has standing to move to vacate a TPR, and assuming further that the trial court has the authority to vacate a TPR after more than a year has elapsed following its issuance, the burden on the moving party seeking such relief is a considerable one. Even in civil cases, in which the court has explicit authority pursuant to Rule 60(b) to grant a new trial, the dominant purpose of the Rule is to "buttress the finality of judgments." Railway Express Agency v. Hill, 250 A.2d 923, 925 (D.C.1969). Since the rules of the Superior Court applicable to neglect proceedings contain no provision comparable to Civil Rule 60(b), the showing which the mother must make is, if anything, even greater.
In civil proceedings, a motion for a new trial based on newly discovered evidence[3] must be filed within one year after the date of the judgment. Super.Ct.Div.R. 60(b). The omission of Rule 60 from the Neglect Rules cannot have been intended to provide the movant with more time than a civil litigant has to file such a motion. Accordingly, if the mother's motion is maintainable at all, it must be analyzed by analogy to the catchall provision in the Civil Rules, namely, Super.Ct.Civ.R. 60(b)(6).
In Ohio Valley Constr. Co. v. Dew, 354 A.2d 518 (D.C.1976), we explained that
[t]he provision of Rule 60(b)(6) allowing a court to vacate a judgment upon motion made within a reasonable time creates a method for granting relief beyond the time limitation in unusual and extraordinary situations justifying an exception to the overriding policy of finality.
Id. at 521 (citations and internal quotation marks omitted). The decision to grant or deny a motion under Rule 60(b)(6) is committed to the sound discretion of the trial judge. Id. To secure a new trial in a child neglect proceeding, the mother must, at least, show *1366 the existence of an extraordinary situation of the kind described in Dew.

III.
The mother contends that the trial judge should have vacated the TPR's because the children's prospects for adoption had diminished. See In re A.B.E., 564 A.2d 751, 757 (D.C.1989); cf. In re A.W., 569 A.2d 168, 172-74 (D.C.1990). The trial judge could reasonably conclude, however, that the alleged changes in the circumstances of the children were not sufficiently extraordinary to warrant overriding the public interest in finality and, above all, in stability for the children.
At the time the judge ordered the termination of the mother's rights, he found that the foster parents "are not able to adopt [the daughter] at this time," although he viewed the chances of adoption as "very good." In her motion to vacate the TPR, the mother alleged that the foster parents had filed a petition for adoption, and had then withdrawn it because of the daughter's behavior problems. Families have their ups and downs, and this is hardly the kind of drastic change of circumstances which would warrant the vacation of a TPR. The judge, at the very least, could reasonably reach that conclusion.
The only stumbling block to the adoption of the son by his paternal grandmother appears to be the grandmother's religious objection to divorce.[4] The mother claims, without citation of authority, that "the law will not allow [the paternal grandmother] to adopt without her husband's agreement."[5] Assuming, without deciding, that the requirement that the spouse join the petition applies to separated persons in the paternal grandmother's situation and that it cannot be waived in the interest of the childassumptions that are not self-evidently correctwe are not prepared to hold, even if the paternal grandmother cannot adopt, that the mother's parental rights must be restored. In the son's case (as well as the daughter's), restoration of those rights to one who is now legally a stranger to the children would unsettle what has already been settled, and would make the children's lives and circumstances more uncertain than they already are.
We also conclude that the judge did not abuse his discretion by declining to hold an evidentiary hearing. The basic facts were before him, in the form of reports by the DHS social workers. The allegations in the mother's motion were evidently based on the disclosures in those reports. Assuming that the mother's allegations were true, the judge could reasonably conclude that it would not be in the children's best interest to restore the mother's parental rights and thereby to risk the reopening of potentially traumatic concerns which the termination orders were designed to eliminate.
The children remain wards of the Department of Human Services. Reviews of each child's status will continue at least every six months. See Super.Ct.Neglect R. 26(a). Nothing is cast in stone, and the trial judge retains ample authority to act in the best interest of the children. Given these circumstances, we find no abuse of discretion by the trial court.[6]

IV.
For the foregoing reasons, the orders appealed from must be and each is hereby affirmed.
NOTES
[1] Both children were committed to the custody of the Department of Human Services.
[2] The mother's contact with the children was sporadic at best, totalling some eleven visits during a three-year period.
[3] The evidence on which the mother relies in this case was not in existence at the time her parental rights were terminated. Arguably, it may be more accurately characterized as "changed circumstances," or new evidence, rather than newly discovered evidence.
[4] There is no indication in the record that the paternal grandmother's religious affiliation has changed since the entry of the orders terminating parental rights.
[5] Our adoption statute provides, with an exception not here pertinent, that "[a] petition may not be considered by the court unless petitioner's spouse, if he [or she] has one, joins in the petition...." D.C.Code § 16-302 (1989).
[6] In In re D.G., 583 A.2d 160, 168-69 (D.C.1990), the trial court entered a TPR, and the mother appealed. During the pendency of the appeal, the child's prospects for adoption were severely diminished, and we remanded the case in order to give the trial court an opportunity to consider the change in circumstances. In the present case, the trial court has already held a hearing on the effect of the new circumstances, and a remand is therefore unnecessary.