990 A.2d 530 (2010)
In re D.A.; E.L., Appellant.
Nos. 08-FS-201, 09-FS-1039.
District of Columbia Court of Appeals.
Argued January 27, 2010.
Decided March 11, 2010.
Kay A. Ogilvie, for appellant.
Tobey K. Oliver, Assistant Attorney General, with whom Peter J. Nickles, Attorney *531 General for the District of Columbia, Todd S. Kim, Solicitor General, and Donna M. Murasky, Deputy Solicitor General, were on the brief, for appellee the District of Columbia.
Before THOMPSON and OBERLY, Associate Judges, and BELSON, Senior Judge.
BELSON, Senior Judge:
The Family Court of the Superior Court ordered the termination of appellant E.L.'s parental rights in her son D.A. Seven months later, E.L. moved for reconsideration of that order. A magistrate judge of the Superior Court denied that motion. E.L. then moved for review of the order denying her motion for reconsideration, and that motion was in turn denied by a Superior Court judge. The District asserts that there is no authority for the Superior Court to consider such post-trial motions in a case involving termination of parental rights (TPR), but we need not decide whether such authority exists, as we would find no abuse of discretion in the rulings denying the motions on the grounds stated: that appellant had proffered no new evidence or changed circumstances and that the TPR did not, in any event, hinge upon the issues raised at the reconsideration and review stages. Accordingly, we affirm.

I.
D.A., a boy, was born in 1995. E.L. is his biological mother and K.A. is his maternal grandmother; a sister, C.L., was born in 2006 with serious health problems and died in 2008, some months after the termination of E.L.'s parental rights as to D.A.
E.L. has a history of drug abuse and has continued to use marijuana despite regular court-ordered drug tests. A mental health expert witness described E.L. as impulsive and poor at managing anger. D.A. has been diagnosed with numerous psychiatric disorders, manifest in violent and other ways and for which he takes medications and undergoes therapy. He is enrolled in special education.
In 2002, the Child and Family Services Agency (CFSA) determined that E.L. had beaten D.A. and filed a petition upon which he was adjudged neglected and committed to CFSA care. CFSA placed D.A. for the first time in January 2003 with the foster mother with whom he is now living and in whose care his problematic behavior has generally receded. Initially, CFSA's goal for D.A. was reunification with his mother, E.L. Because E.L. failed to cooperate, in October 2003, CFSA changed the goal to guardianship with D.A.'s grandmother, K.A. In July 2006, he was placed with K.A., whereupon his behavior went "out of control." In late 2006, after D.A. threatened his grandmother with a knife and engaged in other serious misbehavior, he spent three weeks in inpatient psychiatric evaluation. A short time later, he was again placed with his foster mother. Following D.A.'s initial commitment, and until February 2007, E.L.'s visits with D.A. were sporadic. At that time, the court changed the permanency goal for D.A. to adoption. Subsequently, E.L.'s visits became more regular, but during these visits D.A. often spent the time on the computer rather than interacting with E.L. During this same time period, E.L. devoted much of her time to caring for the seriously ill C.L. The foster mother did not commit to adopting D.A., but another potential adoptive placement was identified.
The government moved in April 2007 for termination of E.L.'s parental rights. At the November 2007 hearing, a mental health expert witness testified that D.A. had bonds with both E.L. and his foster *532 family and that remaining with E.L. was not in D.A.'s best interests because, among her other shortcomings, E.L. could not provide needed structure and attention and did not recognize the gravity of D.A.'s behavioral and emotional problems. In January 2008, after a three-day trial, Judge Kaye Christian entered findings of fact and conclusions of law, and ordered termination as being in D.A.'s best interests. The judge addressed each of the five required factors. She found weighing in favor of termination: E.L.'s inability to see to D.A.'s mental health, see D.C.Code § 16-2353(b)(2) (2001); E.L.'s inability to provide a stable home, see § 16-2353(b)(1); the obstacle that E.L.'s parental rights posed to any possible adoption, whether by D.A.'s foster mother or someone else, see id.; and E.L.'s continuing drug use, see § 16-2353(b)(5). She found that the bond between D.A. and E.L., see § 16-2353(b)(3), was outweighed by E.L.'s inability to provide a suitable environment. She also found that D.A.'s opinion regarding his best interests, see § 16-2353(b)(4), was favorable to both sides but was undermined in any case by D.A.'s immaturity and lack of understanding.
In February 2008, E.L. appealed the TPR grant to this court, but E.L. has expressly waived her direct appeal of the TPR order and before this court challenges only the trial court's ruling on her post-trial motions.
In December 2008, Magistrate Judge Noel Johnson denied reconsideration, which E.L., claiming newly discovered evidence, had sought after initially filing the notice of appeal. As the legal basis for such a motion, E.L. cited first Super. Ct. Civ. R. 60(b)(6), and then D.C.Code § 16-2324(a)(3) (2005). The magistrate judge stated that neither provision was applicable. See Super. Ct. Neg. R. 1(b), D.C.Code § 16-2324(a)(3).[1] Consequently, he purported to exercise equitable powers on the theory that there was "no adequate remedy at law" and that substantively to apply § 16-2324(a)(3) was "the nearest approximation of the legislature's intent." He first held that the death of C.L. was clearly not newly discovered evidence under § 16-2324(a)(3), as it occurred subsequent to the trial and entry of the TPR order; that, even if it was, Judge Christian had relied on other significant factors in addition to the demands that C.L.'s care imposed on E.L.; and that, therefore, reconsideration was not warranted on this basis. He next held that Judge Christian had not relied on the potential adoption of D.A. by the foster mother and that the foster mother's alleged intention not to adopt D.A. also did not warrant reconsideration of the order for termination.[2]
In July 2009, Judge Zinora Mitchell-Rankin denied E.L.'s motion for review of the magistrate judge's denial of reconsideration. See D.C. Fam. Ct. R. D(e)(1). Without deciding whether it was proper to apply § 16-2324 in a TPR case, Judge Mitchell-Rankin ruled that there was neither newly discovered evidence nor changed circumstances that would satisfy § 16-2324. Even if such evidence or circumstances *533 existed, she added, relief was unwarranted because Judge Christian's decision did not depend on the issues identified and because E.L. had shown at trial neither that she was addressing her own mental health and drug problems, nor that she understood D.A.'s needs.
E.L. now appeals Judge Mitchell-Rankin's order refusing to overturn Magistrate Judge Johnson's denial of reconsideration.

II.
As E.L. conceded in oral argument, nothing in the statutes or court rules provides for reconsideration of a TPR grant.[3] Moreover, E.L. can identify no law to support the proposition that the Superior Court has equitable power to reconsider a TPR grant, and she acknowledges that she is asking this court to "expand" for public-policy reasons a parent's ability to challenge a TPR order.
To be sure, the government concedes that no statute prohibits the Superior Court from exercising equitable powers to reconsider a TPR order. Ultimately, however, we need not decide whether, in the absence of such a prohibition, the chancellor  i.e., the magistrate judge and reviewing judge below  permissibly undertook to exercise equitable power. Whatever the case, E.L.'s appeal, as we explain below, must fail.

III.
Assuming that the Superior Court permissibly exercised equitable power in entertaining E.L.'s motion for reconsideration, our review of the decision on appeal can only be for abuse of discretion.[4]See Tobin v. John Grotta Co., 886 A.2d 87, 90 (D.C.2005) ("orders denying motions for reconsideration" under Civ. R. 59(e) are reviewed for abuse of discretion); In re W.E.T., 793 A.2d 471, 477 (D.C.2002) (denial of Civ. R. 60(b) motion is reviewed for abuse of discretion); In re D.W.G., 115 Daily Wash. L. Rptr. 2097, 2116-17 (D.C.Super. Ct. Oct. 5 & 6, 1987) (describing § 16-2324(a)(3) determination as confided to trial court's discretion).
Section 16-2353 provides for TPR "when the judge finds from the evidence presented, after giving due consideration to the interests of all parties, that the termination is in the best interests of the child." D.C.Code § 16-2353(a). It requires the judge to consider the continuity and stability a child needs; the "physical, mental, and emotional health of all [] involved," particularly the child; the child's relationships with relatives and caretakers; the child's own opinion "to the extent feasible" of his own best interests; and evidence of continuing drug use in the home. D.C.Code § 16-2353(b).
*534 After the trial judge here methodically applied those factors and ordered termination as being in D.A.'s best interests, the magistrate judge and reviewing judge considered whether any newly discovered evidence or changed circumstance warranted disturbing the TPR order. The magistrate judge denied reconsideration, finding that C.L.'s death was not newly discovered evidence, that the trial judge had relied largely on factors other than the demands that caring for C.L. imposed on E.L., and that the trial judge had not relied on the potential for adoption of D.A. by his foster mother. The reviewing judge then denied E.L.'s motion for review of the magistrate judge's decision, finding that there was no newly discovered evidence or changed circumstance, that in any event the outcome had not depended on the issues E.L. identified at the reconsideration stage, and that E.L. was neither addressing her own mental health and drug problems nor understanding of D.A.'s needs. We can find no error in these decisions and, consequently, no abuse of discretion. The TPR order the magistrate judge and reviewing judge reviewed was arrived at after thorough and methodical application of the law, and the reasons given for denying relief are lucid and supported by the evidence.[5]
For the foregoing reasons the rulings of the Superior Court are affirmed.
So ordered.
NOTES
[1] Section 16-2324(a) provides: "An order of the Division under this subchapter shall be set aside if ... newly discovered evidence so requires." D.C.Code § 16-2324(a), (a)(3). "[T]his subchapter" refers to Chapter 23, Subchapter I, on "Proceedings Regarding Delinquency, Neglect, or Need of Supervision." TPR proceedings are governed by Subchapter III of the same chapter.
[2] That the foster mother had no such intention was gleaned from the remarks of D.A.'s guardian ad litem at a neglect hearing on July 15, 2008. There was no direct statement or evidence to that effect.
[3] Compare D.C.Code § 16-2324(a)(3) (2001) (providing for setting aside of order under delinquency, neglect, and supervision subchapter) with §§ 16-2351 to -2365 (providing for appeal but not setting aside of order under TPR subchapter); compare Super. Ct. Neg. R. 1(b) (not incorporating Civ. R. 60(b) on postjudgment relief into the rules for neglect and abuse proceedings, which contain TPR rules) and 35-39 (providing for appeal but not reconsideration of TPR grant) with Dom. Violence R. 1 (incorporating Civ. R. 60), Adoption R. 60(b) (providing for amendment or new trial), and Dom. Rel. R. 60(b) (providing for postjudgment relief); see also In re M.F., 644 A.2d 1363, 1365 (D.C.1994) (noting absence of "any specific provision" that "would authorize [the Superior Court] to set aside a TPR" and "[a]ssuming, without deciding," that such authority exists).
[4] As noted earlier, E.L.'s initial appeal of the TPR order itself has been waived. See supra page 4. Even were we reviewing that order, our review would still be for abuse of discretion only. See In re P.S., 797 A.2d 1219, 1224 (D.C.2001).
[5] We note that it is unclear how much practical difference the restoration of E.L.'s parental rights would make. E.L. herself contends that D.A. should stay with his foster mother. It is true that a TPR grant removes, e.g., decision-making rights, but it does not prevent voluntary contact between a child and a biological parent. E.L. suggests that D.A. might not yet know of these proceedings and could learn of them and be traumatized if we affirmed, a consideration that inheres in this type of case and was a part of the scenario before the experienced trial judge. She appears also to argue that adoption (other than by the foster mother) is not in D.A.'s best interests and that we should restore E.L.'s parental rights to prevent adoption. We repeat that this court reviews the rulings before us only for abuse of discretion and does not consider de novo the question of the best interests of the child.