**RUSTLER'S STEAK HOUSE, Appellant,**

v.

**ENVIRONMENTAL ASSOCIATES, INC.,**
**Appellee.**

**No. 7707.**

District of Columbia Court of Appeals.

Submitted Feb. 21, 1974.

Decided Oct. 29, 1974.

Bertrand H. Merwin, Washington, D.C., for appellant.

Douglas J. Rykhus and Samuel H. Depew, Washington, D.C., for appellee.

Before REILLY, Chief Judge, and KELLY and PAIR,* Associate Judges.

KELLY, Associate Judge.

This court granted appellant's application for allowance of appeal from a judg-

* Retired as of April 14, 1974.

ment entered for appellee in the Small Claims and Conciliation Branch of the trial court. We reverse.

Environmental Associates, Inc., an installer of refrigeration equipment, sued Rustler's Steak House for an alleged contractual balance of $306.87. Rustler's denied liability for $30.98 of the claimed deficiency on the ground that that sum had been applied to the cost of repairs made under a later agreement between the parties.[1] It claimed the remainder [$275.-89] represented an agreed offset to charges for the storage of meat which had been ordered by Rustler's in reliance upon the contract.

The parties to this appeal contracted for the installation of a large commercial-type freezer for the storage of meats on November 4, 1969. The contract signed on that date by J. S. Allred on behalf of Environmental Associates was accepted by I. B. Snapp on behalf of Rustler's on November 8, 1969.

The certified statement of proceedings and evidence[2] lists as undisputed the facts that Allred, an Environmental project engineer, was authorized to make proposals for the company subject to the approval of Environmental's president, Joseph G. Anderson, and that after Snapp, Rustler's general manager, accepted Allred's contract proposal of November 8, the contract was approved by Mr. Anderson on November 11. Under the terms of the contract the equipment was scheduled for installation in "three weeks and will take one week to complete," but could not be installed in December because it was received in a damaged condition and had to be returned. As a result of the delay Snapp wrote Allred on December 30, 1969 that Rustler's intended to cancel the contract if Environmental Associates would not assume responsibility for meat storage

charges incurred by Rustler's in reliance upon the original contract date for anticipated installation.

The refrigeration equipment was eventually installed on March 10, 1970 and at that time Rustler's was credited with $275.-89 against the balance due on the contract. Failing in its later attempt to collect the amount of the storage charges from the shipper's insurer, however, Environmental reversed the credit previously allowed and billed Rustler's for the sum of $275.89.

The statement of proceedings and evidence lists as facts the court finds to be in dispute the testimony of Environmental's president, Mr. Anderson, that the contract promise "the work can start in three weeks and will take one week to complete" was merely a projection based on anticipated delivery from its suppliers and upon its workload and was not intended as a specific date of delivery. Mr. Anderson also testified that Allred, the project manager, had no authority to obligate Environmental to assume storage charges incurred by Rustler's. Moreover, it was of record that Allred wrote to Rustler's on March 16, 1970 that Environmental would not assume any obligation for storage costs but would try to recover the money from the shipper. Mr. Anderson further testified that Environmental had included the claim for storage charges in its total claim against the shipper's insurer for damages to the freezer unit; had credited Rustler's account for the disputed amount only as a bookkeeping device, and had re-billed Rustler's for the amount due after the shipper's insurer disallowed the claim.

In dispute, also, was the testimony of Mr. Snapp that Rustler's had expected the freezer unit to be installed within a month of the contract date. In anticipation of a mid-December installation date it had ordered a large quantity of meat for delivery

---

1. This amount is not a subject of this appeal.

2. The trial court listened to the tape of the trial proceedings before composing the statement of proceedings and evidence. The tape was unclear in part and the statement appears to be based primarily upon documentary evidence introduced at trial.

in December and a second large shipment for delivery in February, 1970. Snapp also testified that when he notified Environmental late in December of Rustler's intention to cancel the contract, Allred assured him Environmental would be responsible for any storage charges incurred. On March 10, 1970, Environmental's bill containing a credit for $275.89 for storage charges was paid in full. On March 16, Allred wrote that Environmental would not assume any obligation for storage charges and on March 27, 1971, a year later rebilled Rustler's for the $275.89 previously credited for storage.

■ From the above facts, disputed and undisputed, the trial court found that time was not of the essence in the performance of the contract; that damages to the freezer unit prevented the work from going forward in December, and that in light of these difficulties, which were not chargeable to Environmental, the contract was completed within a reasonable time. While these findings are challenged on appeal, they have support in the evidence and are not erroneous as a matter of law. We must therefore accept them.

The trial court went on to find, however, that Allred had no authority to commit Environmental to pay Rustler's storage charges; that he was not authorized to contract for Environmental without Anderson's approval and that he was not authorized to settle or compromise claims. It also found that Allred's verbal offer to pay storage charges incurred was specifically repudiated by Anderson.

We first note that while the trial court, citing plaintiff's exhibit No. 1, found as undisputed the fact that Anderson had approved the contract on November 11, 1969, the exhibit referred to does not show such acceptance and, indeed, Anderson's answer to an interrogatory propounded him pretrial is that the November 4 "proposal-contract was reviewed and approved by me prior to submitting to customer."[3] Anderson also

affirmed Allred's authority to negotiate the contract in answering the pretrial interrogatories.

Second, the finding that Anderson specifically repudiated Allred's verbal offer to pay the storage charges, while technically correct, should be put in perspective. On December 30, 1969, Snapp wrote Allred that he would have to cancel the contract unless Environmental would assume storage charges incurred by Rustler's in reliance upon the anticipated contract completion date. Allred's telephonic response was that Environmental would pay the charges. On March 10, 1970, the very day the equipment was installed, Rustler's was billed by Environmental for the total balance due on account. A credit on the bill of $275.89 had been. given for storage charges, and Snapp wrote out a check in full and final payment of the account that same day. He noted on the face of the check that it was in settlement of invoice #2102, less storage charge of $275.89. It was not until March 16, almost a week later, that Allred wrote Snapp that Anderson did not intend to stand behind Allred's verbal commitment with regard to the back charge for meat storage; that every effort would be made to recover the storage cost from the shipper or the manufacturer, and, in apology, that "at this point I am acting as a go-between for Environmental." Environmental nevertheless sent Rustler's another statement noting the storage charge credit and showing no balance due on account. It was not until one year later that Rustler's received an invoice reversing the credit previously allowed and, upon Rustler's refusal to pay, Environmental filed the instant suit.

■ Among the many contentions on appeal the principal one is that recovery by Environmental is barred by an accord and satisfaction. We agree. All of the elements of such an accord and satisfaction are present. There was an "honest dispute between the parties as to the terms of the

**3. R.** at 24.

contract [the completion date] and the amount due thereunder [allowance of a setoff]."[4] The defendant [Rustler's] "sent his check for the amount he was willing to pay in compromise, intending it as a liquidation of plaintiff's [Environmental's] claim against him,"[5] and "plaintiff [Environmental], when he accepted and cashed the check, understood, or from the facts should have understood, the conditions upon which it was sent".[6] Here the *face* of the check indicates an understanding that it was payment in full of a disputed claim.[7] Silent acceptance of a check sent in payment of a disputed claim, even in the absence of a finding of mental assent, is now generally held to constitute an accord and satisfaction.[8]

 We do not think that Anderson's after-the-fact disclaimer of Allred's authority, as the corporation's agent, to compromise a disputed claim for Environmental can be given effect. Nor can we see where the trial court's finding that Allred was without authority to do so is otherwise supported in the evidence. The existence of an agency is, of course, generally a question of fact and the burden is upon the party relying on an agent's authority to bind his principal by an accord and satisfaction to prove it.[9] Here, all negotiations with Rustler's in reference to the contract, its alleged breach, and the compromise of the claim for storage charges were had with Allred, as authorized agent for Environmental. Thereafter the corporation itself billed Rustler's for the balance due under the contract, allowing credit for the storage charges. The corporation accepted and cashed Rustler's check upon which there is a clear notation that it is in settlement for the full balance due, noting a deduction for storage charges. And even

after Anderson's subsequent attempt to repudiate the compromise agreement the corporation sent Rustler's a statement showing that no balance was due on the account.

 We hold that under these circumstances, should the trial court be correct in finding that Allred, lacked authority to enter into the initial compromise, the corporation by its conduct thereafter ratified his actions and an accord and satisfaction resulted.

Accordingly, the judgment of the trial court is

Reversed.

---

4. Andrews v. Haller Wall Paper Co., 32 App. D.C. 392, 398 (1909).

5. *Id.*

6. *Id.*

7. *See* Voight & McMakin Air Con. v. Property Redev. Corp., D.C.App., 276 A.2d 239 (1971).

8. *See* cases and authorities cited in Autographic Register Co. v. Philip Hano Co., 198 F.2d 208, 212–213 (1st Cir. 1952).

9. 3 C.J.S. Agency §§ 497, 547 (1973).