**HOUSEHOLD FINANCE CORPORATION III,**
Appellant,

v.

**FIRST AMERICAN TITLE INSURANCE COMPANY, Appellee.**

No. 95–CV–117.

District of Columbia Court of Appeals.

Argued Nov. 21, 1995.
Decided Dec. 28, 1995.

Douglas H. Seitz, Baltimore, MD, with whom Catherine H. Bellinger was on the brief, for appellant.

Carol S. Blumenthal, Washington, DC, for appellee.

Before TERRY and SCHWELB, Associate Judges, and NEWMAN, Senior Judge.

SCHWELB, Associate Judge:

The dispositive question presented in this appeal is whether the trial judge had the authority to grant a "motion for reconsidera-

tion," and to set aside her own earlier order on the basis of legal error, where the motion was not filed within the 10–day period specified in Super.Ct.Civ.R. 59(e). We answer that question in the negative, reverse the judgment, and remand the case with directions.

## I.

## TRIAL COURT PROCEEDINGS

Mayme R. Jiles was the owner of a house located at 4955 11th Street, N.E. in Washington, D.C. In January 1986, the house was sold at auction at a tax sale. Remarkably, that sale was initiated because Ms. Jiles, who was otherwise current in her taxes, allegedly owed the District the sum of $5.75 in interest or penalties.[1] Marie A.F. Neville purchased the property at the tax sale for $168.70. In July 1991, following the expiration of the statutory redemption period, a tax deed was issued to Ms. Neville.

On August 29, 1991, Ms. Neville filed a Complaint to Quiet Title. She joined as defendants, *inter alia*, the original owner, Ms. Jiles, and Household Finance Corporation III (HFC), which had issued a home equity loan to Ms. Jiles, and which held the first deed of trust on the property. HFC filed a third party complaint against First American Title Insurance Company, alleging that First American was required by a title insurance policy to defend HFC in Ms. Neville's action to quiet title. First American denied that it was required to defend HFC, relying primarily on the following limitation in the policy:

This policy does not insure against loss or damage by reason of the following:

... 5. Taxes on said property are not paid.

HFC and First American filed cross-motions for summary judgment. On August 24, 1993, in a comprehensive written decision (Order No. 1), the trial judge granted HFC's motion for summary judgment and denied First American's cross-motion. The judge

---

1. The tax deed specifies that $5.75 was owing in penalties. The trial judge found, however, that according to an office printout from the District's Department of Finance and Revenue, there was an arrearage of $5.75 in interest. In light of our disposition of the appeal, this discrepancy is immaterial.

held that the limitation quoted above referred to non-payment of taxes and not to non-payment of interest, and that any ambiguity should be resolved against First American, as the insurer which had drafted the policy.[2]

On September 24, 1993, one month after the date of Order No. 1, First American, which had retained new counsel, filed what it denominated a "motion for reconsideration." Relying on our then-recent decision in *Washington v. State Farm Fire & Casualty Co.,* 629 A.2d 24 (D.C.1993), in which we reiterated that "[t]he scope of an insurer's duty to defend an action against its insured ... is to be determined by the allegations of the complaint," *id.* at 25–26 (quoting *Boyle v. National Casualty Co.,* 84 A.2d 614, 615 (D.C. 1951)) (footnote omitted), First American asserted that it had no obligation under the policy to defend HFC. First American invited the court's attention to paragraph 6 of Ms. Neville's complaint, in which it was alleged that the tax sale was held in 1986 *"[a]s a result of real estate taxes not being paid."* (Emphasis added). On December 1, 1993, the trial judge issued a second written opinion (Order No. 2) in which she expressed agreement with First American's new contentions, granted the motion for reconsideration, vacated the summary judgment for HFC, and entered judgment in favor of First American on HFC's third-party claim.

On December 13, 1993, HFC filed a motion to alter or amend Order No. 2. HFC contended that First American's motion for reconsideration should have been brought pursuant to Super.Ct.Civ.R. 59(e), and that it was untimely because it was not filed within the 10–day period provided in that Rule. HFC also asserted that the tax deed which had been made a part of Ms. Neville's com-

plaint, *see* Super.Ct.Civ.R. 10(c), showed that there was no arrearage in taxes, that $5.75 was owing in penalties rather than taxes, and that the complaint, as clarified by the deed, thus showed that the exception in the policy for unpaid taxes did not apply. On January 4, 1995, in a third written opinion (Order No. 3), the trial judge denied HFC's motion to alter or amend. This appeal followed.

## II.

## LEGAL DISCUSSION

*A. General Considerations.*

"A motion for reconsideration, by that designation, is unknown to the Superior Court's Civil Rules." *Fleming v. District of Columbia,* 633 A.2d 846, 848 (D.C.1993). The term has been used loosely to describe two quite different kinds of motions, specifically

1. a motion to alter or amend a judgment pursuant to Super.Ct.Civ.R. 59(e);[3] and

2. a motion for relief from judgment pursuant to Rule 60(b).[4]

*Id.*

In *Wallace v. Warehouse Employees Union No. 730,* 482 A.2d 801 (D.C.1984), we explained the difference between Rules 59(e) and 60(b) in terms of

whether, for the first time, the movant is requesting consideration of additional circumstances; if so, the motion is properly considered under Rule 60(b), but if the movant is seeking relief from the adverse consequences of the original order on the basis of error of law, the motion is properly considered under Rule 59(e).

*Id.* at 804; *accord, Fleming,* 633 A.2d at 848; *Frain v. District of Columbia,* 572 A.2d 447,

2. In Order No. 1, the judge also set aside the tax deed and held that Ms. Jiles retained title to the property. No party has appealed from this part of the order. The present appeal deals solely with the dispute between HFC and First American regarding the latter's alleged duty to defend.

3. Rule 59(e) provides:
    (e) *Motion to alter or amend a judgment.* A motion to alter or amend the judgment shall be served not later than 10 days after entry of the judgment.

4. Rule 60(b) provides in pertinent part:

    (b) *Mistakes; inadvertence; excusable neglect; newly discovered evidence; fraud, etc.* On motion and upon such terms as are just, the Court may relieve a party ... from a final judgment, order, or proceeding for the following reasons: (1) Mistake, inadvertence, surprise, or excusable neglect; ... or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time....

449 (D.C.1990); *Dove v. Codesco,* 569 F.2d 807, 809 (4th Cir.1978).

■ In this case, First American presented no additional circumstances to the court in support of its motion for reconsideration. Rather, it claimed that Order No. 1 was legally erroneous. Accordingly, as a matter of law, such a motion was cognizable under Rule 59(e) and not Rule 60(b). *Wallace,* 482 A.2d at 804.

■ Rule 59(e) provides, however, that a motion filed pursuant to its provisions "shall be served not later than 10 days after entry of the judgment." See note 3, *supra.* It is undisputed that, in this case, First American's motion was not served within the 10–day period. This defect cannot be cured by putting a different label on the motion.

### B. Rule 60(b)(1).

■ Rule 60(b)(1) authorizes the court to relieve a party from a judgment for, *inter alia,* "excusable neglect" or "mistake." We have repeatedly held, however, that an untimely Rule 59(e) motion "cannot be converted into a Rule 60(b)(1) motion in order to avoid the 10–day filing requirement of Rule 59(e)." *Fleming,* 633 A.2d at 849; *Frain,* 572 A.2d at 450. Indeed, Rule 59(e)'s 10–day time period is jurisdictional. *D.D. v. M.T.,* 550 A.2d 37, 42 (D.C.1988); *accord, Fleming,* 633 A.2d at 849. Accordingly, counsel's failure to file within the 10–day period was not "excusable neglect" or "mistake" within the meaning of Rule 60(b)(1). *See Frain,* 572 A.2d at 450.

■ Logic and sound judicial administration likewise preclude our countenancing the use of Rule 60(b)(1) as a means of circumventing the 10–day requirement of Rule 59(e), and of thus retroactively conferring validity on an untimely claim of legal error. It would be incongruous to read Rule 59(e) as stating, in effect, that a litigant must assert such a claim within 10 days of the judgment

but that, if he fails to do so, he will be permitted to assert it anyway, without suffering any adverse consequence. Such a construction would remove any incentive for the litigant to comply with the time period specified in Rule 59(e), and would thus effectively nullify the 10–day limitation. Indeed, as we understand First American's position at oral argument, its counsel was not relying on Rule 60(b)(1), but on Rule 60(b)(6).

### C. Rule 60(b)(6).

■ Rule 60(b)(6) is a catch-all provision which authorizes the trial judge to "grant[ ] relief beyond the time limitation in unusual and extraordinary situations justifying an exception to the overriding policy of finality." *In re M.F.,* 644 A.2d 1363, 1365 (D.C.1994) (quoting *Ohio Valley Constr. Co. v. Dew,* 354 A.2d 518, 521 (D.C.1976)).

We have stated that where a motion based on error of law by the trial court is not timely filed under Rule 59(e), Rule 60(b) "permit[s] the court at least to consider the denial of the motion to reconsider." *Wallace,* 482 A.2d at 805 & n. 13 (citations omitted) (dictum);[5] *see also In re Tyree,* 493 A.2d 314, 317 n. 5 (D.C.1985) (citing *Wallace*).[6] The trial judge in this case viewed *Tyree* (and presumably *Wallace*) as authorizing her to reconsider her judgment pursuant to Rule 60(b)(6). *See* Order No. 2, at 12–13; Order No. 3, at 3. The judge opined that, consistent with these authorities, "[a] trial court may relieve a party from a final judgment pursuant to Rule 60(b)(6) where the judgment may work an extreme and undue hardship." Order No. 2, at 12 (quoting *Clement v. District of Columbia Dep't of Human Servs.,* 629 A.2d 1215, 1219 (D.C.1993)) (citing *Starling v. Jephunneh Lawrence & Assocs.,* 495 A.2d 1157, 1161 (D.C.1985) (citations and internal quotation marks omitted)).

We have no quarrel with the trial judge's view that she had the authority, pursuant to

---

**5.** In *Wallace,* the motion was timely under Rule 59(e), and the discussion of Rule 60(b) was therefore unnecessary to the disposition of the case.

**6.** The specific subdivision of Rule 60(b) to which the court was alluding was not specified either in *Wallace* or in *Tyree.*

Rule 60(b)(6), to consider First American's claim of error of law. The time restriction in Rule 59(e), however, cannot simply be ignored, and the judge's Rule 60(b)(6) authority may be exercised only in a truly extraordinary case in which a clear and palpable miscarriage of justice would otherwise result. As we explained in *Clement,*

> Rule 60(b)(6) is not a *carte blanche* to cast adrift from fixed moorings and time limitations guided only by the necessarily variant consciences of different judges.... Its scope is 'extremely meagre [sic].'

629 A.2d at 1219 (citations omitted); *see also Fleming,* 633 A.2d at 849. "Rule 60(b)(6) is properly invoked in extraordinary circumstances or where a judgment may work an extreme and undue hardship." *Starling,* 495 A.2d at 1161; *Fleming,* 633 A.2d at 849.

■ This case does not present a record of extraordinary circumstances or of extreme and undue hardship. Neither party is without resources, and each retained its own counsel. The trial judge's decision in Order No. 1 may have been right or wrong, but even if it was wrong, there is no evidence of the kind of miscarriage of justice which would authorize a court to jettison the "overriding policy of finality," *M.F.,* 644 A.2d at 1365, by overlooking a time limitation specified in the court's own rules. First American contends, in substance, that because Order No. 1 was based on an error of law, the judge must be permitted to correct that error. But this contention proves too much. If we were to adopt First American's reasoning, then the judge would be permitted to vacate her own order simply because she had changed her mind, irrespective of the moving party's failure to comply with the time requirements of Rule 59(e). Such a doctrine knows no limiting principle, and effectively reads the 10–day limitation out of the Superior Court's Civil Rules.

This case can profitably be compared with our decision in *Starling,* on which the trial judge relied. There, summary judgment had been granted against the appellants after their attorney had failed to file a timely opposition to the motion. It appeared, however, that this failure was due to a personal emergency of the attorney, who was called out of the country when his father, while vacationing in Curacao, suffered a heart attack which later proved fatal. 495 A.2d at 1159–60 & n. 3. The attorney acted with diligence as soon as the emergency was over. *Id.* at 1160. "This jurisdiction has recognized that when personal problems over which counsel has no control result in an adverse judgment [against] his client, the circumstances may be so egregious as to justify relief under Rule 60(b)(6)." *Id.* at 1161–62 (citations and internal quotation marks omitted).

In the present case, First American's original attorney failed to bring to the trial judge's attention certain precedents which, according to new counsel and the judge, entitled First American to relief. We conclude as a matter of law [7] that this is not the type of extreme situation to which Rule 60(b)(6) applies.[8]

### III.

### CONCLUSION

For the foregoing reasons, the judgment of the trial court is reversed. The case is remanded for further proceedings consistent with this opinion.

---

7. In general, the decision whether to grant or deny a Rule 60(b) motion is confided to the trial court's discretion. *Fleming,* 633 A.2d at 849 (citations omitted). In the present case, however, we conclude that the trial judge's exercise of discretion was undermined by a view of the law that is not consistent with our decision in *Fleming* and the authorities there cited. *See, e.g., In re J.D.C.,* 594 A.2d 70, 75 (D.C.1991); *Johnson v. United States,* 398 A.2d 354, 365 (D.C.1979).

8. The trial judge expressed concern that denial of the Rule 60(b) motion would penalize the client for the errors of its counsel. *See* Order No. 2, at 11 ("[t]he party and the lawyer are two different entities"). But "counsel's mistake must usually be imputed to, and thus bind, the client." *Lynch v. Meridian Hill Studio Apartments, Inc.,* 491 A.2d 515, 519 (D.C.1985); *see also Link v. Wabash R.R. Co.,* 370 U.S. 626, 633–34, 82 S.Ct. 1386, 1389–90, 8 L.Ed.2d 734 (1962). The rule of *Lynch* applies here.

*So ordered.*[9]

---

9. More than three weeks after oral argument, counsel for First American submitted a letter to the court pursuant to D.C.App.R. 28(k), in which she asserted for the first time that Order No. 1 was not a final order, and cited Super.Ct.Civ.R. 54(b). "Rule 28(j) is designed to allow a party to supplement authority for issues already argued in that party's brief." *Harstad v. First Am. Bank,* 39 F.3d 898, 905 (8th Cir.1994). All of the arguments presented to the trial judge and to this court, both in the briefs and orally, addressed Super.Ct.Civ.R. 59 and 60. We therefore decline, at this stage of the litigation, to consider the question whether Order No. 1 was subject to revision pursuant to Rule 54(b). *Id.; see also Winston v. Children & Youth Servs. of Del. County,* 948 F.2d 1380, 1385 (3d Cir.1991), *cert. denied,* 504 U.S. 956, 112 S.Ct. 2303, 119 L.Ed.2d 225 (1992); *Williams v. Leach,* 938 F.2d 769, 772 (7th Cir.1991); *cf. Ramos v. United States,* 569 A.2d 158, 162 n. 5 (D.C.1990); 9 James W. Moore, Moore's Federal Practice ¶ 228.02 (2d ed. 1995) (citing authorities).