**Maximo PIEROLA, Appellant,**

v.

**Gerasimos MOSCHONAS, Appellee.**

No. 94–CV–30.

District of Columbia Court of Appeals.

Argued Oct. 31, 1996.

Decided Jan. 16, 1997.

Richard A. Seligman, Washington, DC, for appellant.

John H. Spaulding, Washington, DC, for appellee.

Before FERREN, STEADMAN and KING, Associate Judges.

STEADMAN, Associate Judge:

This appeal requires us to examine the jurisdictional doctrine of unique circumstances and the affirmative defense of accord and satisfaction. Finding that we have jurisdiction under the unique circumstances of this case and that the trial court misconceived the applicable law in denying appellant's accord and satisfaction defense, we reverse.

## I.

Appellant Maximo (Tito) Pierola and appellee Gerasimos (Mike) Moschonas were business associates in the mid 1980s. The precise nature of their association is the subject of this lawsuit. Both men were in the construction business. Moschonas was an experienced bridge painter. Pierola was a general contractor who, by virtue of his Hispanic background, qualified for minority set aside contracts. Pierola and Moschonas first met in April 1985, when Pierola proposed

they join forces to obtain contracts from the District of Columbia to scrape and paint bridges and other metal structures. The two men agreed to bid on two such projects: one to paint three water towers at the Lorton Reformatory (tower contract) and one to paint the South Capitol Street Bridge and three smaller bridges (bridge contract). Moschonas prepared the bids, Pierola submitted them, and the contracts were awarded to Pierola's company, Tito Construction.

Originally Pierola and Moschonas were to split the profits 50/50, but because Moschonas couldn't secure the necessary financial backing, the parties entered into a written agreement on September 6, 1985 that split the profits 60/40 in Pierola's favor. At the bench trial below, Pierola claimed the September 6 contract was a fraud, and that he had never signed it. Pierola attempted to explain his signature on the contract by claiming that he was in the habit of signing blank pieces of paper over his typed signature so his employees could make needed purchases in his absence. The trial court found Pierola's assertion "incredible" and made a factual finding on the record that Pierola was lying under oath.

Pierola and Moschonas' working relationship lasted only a few months. Moschonas supervised the tower contract for three weeks, then moved on to supervise the bridge contract. After a few weeks on the bridge contract, Pierola and Moschonas had a falling out over whether to sandblast or manually scrape the South Capitol Street Bridge, and Moschonas walked off the job in November 1985.

During their working relationship Pierola wrote Moschonas several checks drawn on both payroll and non-payroll accounts totaling over $16,000. The last of these checks was issued on Christmas Eve 1985 in the amount of $5,000. The check was written at Pierola's bank on a blank counter check and immediately cashed by Moschonas. Both the canceled check and the microfilm copy indicate that Pierola wrote "paid in full" on the front of the check below the dollar amount.

At trial, however, Moschonas insisted that the check did not say "paid in full" when he cashed it. The trial court found Moschonas was not testifying truthfully in this regard.

At a bench trial Moschonas sought damages equal to forty percent of the profits on the tower and bridge contracts based on the September 6 agreement. Pierola raised the defense of accord and satisfaction based on the Christmas Eve check and counterclaimed for fraud. Initially "troubled by the lack of forthrightness of both litigants," the trial court in mid-trial entered judgment for each party on the other's claims and dismissed the case. However, the court later reconsidered, resumed the trial, and entered judgment for Moschonas on the agreement holding that Pierola's accord and satisfaction defense was invalid. Pierola now appeals.

## II.

We first address the threshold matter of whether this court has jurisdiction to entertain the appeal. Although the notice of appeal was not filed within the time limit set forth in our rules, we conclude that we have jurisdiction over it pursuant to the equitable doctrine of unique circumstances.

The trial court entered judgment for Moschonas on June 10, 1992. On June 22, 1992, Moschonas filed the first of three motions requesting an enlargement of time in which to file a motion to amend the judgment pursuant to Super Ct. Civ. R. 59(e). All three of Moschonas' motions were granted, and Moschonas finally filed his motion to amend the judgment on September 4, 1992, nearly three months after judgment was entered.[1] The trial court denied the motion over a year later on December 21, 1993. On January 11, 1994, Pierola filed the present appeal, challenging the June 10, 1992 judgment.

It is well settled that "[t]he rules of this court require that a notice of appeal be filed within thirty days of the entry of judgment. D.C.App. R. 4(a)(1). 'This time limit is mandatory and jurisdictional.'" *Circle Liquors, Inc. v. Cohen*, 670 A.2d 381, 385 (D.C.1996)

---

1. Moschonas' motion to amend the judgment requested sanctions, attorney's fees, pre-judgment interest, and punitive damages.

(quoting *Frain v. District of Columbia,* 572 A.2d 447, 449 (D.C.1990)). A motion to amend the judgment pursuant to Super. Ct. Civ. R. 59(e) tolls the time for filing a notice of appeal until the trial court disposes of the motion, but only if the motion is timely filed. D.C.App. R. 4(a)(2); *see also Frain, supra,* 572 A.2d at 450. In order to be timely, a Rule 59(e) motion must be filed within ten days after the entry of the judgment being challenged. Super. Ct. Civ. R. 59(e). As we said in *Circle Liquors,*

> this ten-day time limit is jurisdictional and the trial judge has no authority to decide the merits of such a motion if it is untimely. *D.D. v. M.T.,* 550 A.2d 37, 42 (D.C. 1988); *Household Finance Corp. III v. First Am. Title Ins. Co.,* 669 A.2d 703, 705 (D.C.1995). Nor may the trial court extend the time for taking action under ... Rule 59. Super. Ct. Civ. R. 6(b) (trial court may not extend time for motions filed pursuant to, among others, Rules 50(b), 59(b), and Rule 59(e)).

670 A.2d at 385.

In this case, Moschonas' Rule 59(e) motion was not filed until September 4, 1992, well after the ten-day time limit, and the purported extensions of time by the trial court were inoperative under *Circle Liquors.* Thus, the Rule 59(e) motion did not toll the time for appealing the June 10, 1992 judgment. Accordingly, we issued an order to show cause why this appeal should not be dismissed as untimely. In response, Pierola made the following assertions, which Moschonas does not contest. On July 2, 1992, Pierola filed a timely notice of appeal from the June 10 judgment. Pierola subsequently learned that the trial court had granted Moschonas' mo-

tion to extend the time for filing a Rule 59(e) motion. On July 9, Pierola's counsel wrote to the trial court requesting approval of a supersedeas bond in order to stay execution on the judgment pending appeal,[2] and stating that, "[i]f [the bond request] is moot because the time for appealing is tolled by [Moschonas' motion for enlargement of time], then I apologize for the inconvenience and ask that you ... return it to me to be refiled at the appropriate time." The trial court then returned the letter and the bond to Pierola. On September 29, 1992, this court granted Pierola's request to dismiss the July 2, 1992 appeal on the ground that it was not ripe.

Pierola argues that he dismissed his July 2, 1992 appeal as unripe in reasonable reliance on the trial court's actions, and thus we should invoke the doctrine of unique circumstances to assert jurisdiction over the present appeal. We agree.[3]

■ The doctrine of unique circumstances, sometimes referred to as the "lulling" doctrine, *see Frain, supra,* 572 A.2d at 450, creates "a very narrow equitable exception to the rigorous time requirements applicable to the filing of a notice of appeal." *Id.* at 451. For the doctrine to apply, there generally must be "some *affirmative* action or statement by the trial judge which could mislead the [appellant] into believing that he has more time." *Id.* In addition, the appellant's "reliance on the trial court's erroneous action or statement must be reasonable." *Id.; see also Harris Truck Lines, Inc. v. Cherry Meat Packers, Inc.,* 371 U.S. 215, 217, 83 S.Ct. 283, 285, 9 L.Ed.2d 261 (1962) (per curiam).[4]

---

2. When an appeal is taken from a money judgment, the appellant may obtain a stay of proceedings to enforce the judgment by posting a supersedeas bond. Super. Ct. Civ. R. 62(d); 62–I. The stay, which becomes effective when the trial court approves the bond, *see* Super Ct. Civ. R. 62(d), is a matter of right. *See American Mfrs. Mut. Ins. Co. v. American Broadcasting–Paramount Theatres, Inc.,* 87 S.Ct. 1, 3, 17 L.Ed.2d 37 (1966) (memorandum opinion of Harlan, J., Circuit Justice) (interpreting Fed.R.Civ.P. 62(d), which is identical to Super. Ct. Civ. R. 62(d)); *United States v. Wylie,* 730 F.2d 1401, 1402 n. 2 (11th Cir.1984) (same); 11 CHARLES ALAN WRIGHT ET AL, FEDERAL PRACTICE AND PROCEDURE, § 2905 (2d ed.1995) (same).

3. Therefore, we do not address Pierola's argument that his first appeal should be reinstated, or that Moschonas' first motion for enlargement of time should be construed as a motion to amend the judgment under Rule 59(e).

4. Subsequent to our decision to hear oral argument on the merits of this appeal, our sister federal court issued its opinion in *Moore v. South Carolina Labor Board,* 321 U.S.App. D.C. 346, 100 F.3d 162 (1996). In that opinion the court stated that the unique circumstances doctrine can apply only where a party is lulled into missing the deadline by a "formal court order or ruling, containing specific assurances that action which extends or postpones the deadline has

For example, in *Robinson v. Evans*, 554 A.2d 332, 334 (D.C.1989), the trial court granted the appellee's motion for partial summary judgment based on the incorrect understanding that the motion was unopposed. The appellant promptly drew the court's attention to the fact that she had filed an opposition to the motion, but the court failed to vacate the order. *Id.* The appellant did not learn of the court's failure to vacate until a hearing that the court held on "all pending motions," after the time for appealing the partial summary judgment had expired.[5] *Id.* At the conclusion of the hearing, the trial court "affirmed" the order, and appellant filed a notice of appeal three days later. *Id.* at 335. We noted that:

> the only proper course for the trial court was to vacate the ... order as soon as it learned of its original error. The procedural fudging in which the court engaged—holding a hearing on "all pending motions," but without "formally vacating" the earlier order—significantly prejudiced [appellant] by depriving her of an opportunity to seek appellate review of the court's ruling.

*Id.* at 336. Because the trial court erroneously "allowed the [partial summary judgment] order to remain unvacated and thereby prevented [appellant] from filing a timely notice of appeal," we applied the doctrine of unique circumstances to assert jurisdiction over the untimely appeal. *Id.*

In *Circle Liquors, supra*, we declined to apply the doctrine of unique circumstances where the appellant deferred appealing until after the trial court ruled on the appellant's untimely Rule 59 and Rule 50 motions.[6] We concluded that the appellant's deferral of its appeal was not excused by the trial court's acquiescence in appellant's request for an extension of time to file its motions. We noted that "[c]ounsel is responsible for knowing that the motion must be filed within ten days and that the trial judge has no authority to extend the time." 670 A.2d at 387; *see also Center for Nuclear Responsibility, Inc. v. United States Nuclear Regulatory Comm'n*, 251 U.S.App. D.C. 82, 88–89, 781 F.2d 935, 941–42 (1986).

In this case, as in *Circle Liquors*, the trial court purported to extend the time for filing a Rule 59 motion although it had no authority to do so. As *Circle Liquors* makes clear, a party's deferral of a timely appeal in reliance on such an erroneous trial court action does not warrant application of the unique circumstances exception. Here, however, Pierola did not defer filing a timely notice of appeal from the June 10, 1992 judgment in reliance on the trial court's purported extension of time. Instead, Pierola filed a timely notice of appeal in July 1992, but had it dismissed in reliance on the trial court's return of the supersedeas bond, which erroneously indicated that the appeal had been rendered unripe by the appellee's motion. If appellant's appeal was in fact ripe, he had an absolute right to a stay by providing the supersedeas bond, *see* note 2 *supra*, but the trial court acted otherwise by returning the bond. Moreover, unlike in *Circle Liquors*, here it was appellee—not appellant—who initiated the problem by requesting extensions of time to file his Rule 59(e) motion. Thus, it can be said that appellant was "lulled" into withdrawing his first appeal. *Cf. Circle Liquors, supra*, 670 A.2d at 386–87 & n. 12 (appellant that requested an extension of time to file Rule 50 and 59 motions was not "lulled" by trial court into filing too late); *Frain, supra*, 572 A.2d at 452 (appellants who requested an extension of time to file Rule 59(e) motion

---

properly been taken." *Id.* 100 F.3d at 162. The court rejected a claim that erroneous information from the clerk's office staff was sufficient to justify application of the doctrine, *id.* at 163, and we see no occasion at this point to consider how *Moore*'s particular articulation of the requirement of "affirmative action or statement by the trial judge," *Frain, supra*, 572 A.2d at 451, might be applied in the very different circumstances presently before us.

**5.** The partial summary judgment was immediately appealable as an order "changing or affecting the possession of property" under D.C.Code § 11–721(a)(2)(C). *Robinson*, 554 A.2d at 335 n. 11.

**6.** The motions at issue in *Circle Liquors* were filed pursuant to Super. Ct. Civ. R. 50(b) (judgment as a matter of law) and Super. Ct. Civ. R. 59(b) (new trial), both of which, like a Rule 59(e) motion, must be filed within ten days after the judgment. 670 A.2d at 384–85.

were, "if anything, the lullors rather than the lullees").

In these unique circumstances, we think this technically untimely appeal is not barred. The trial court's return of Pierola's supersedeas bond to which he had a right, coupled with the court's purported extension of time for the filing of appellee's Rule 59(e) motion, constituted affirmative steps that misled Pierola into dismissing his initial, timely appeal. We are satisfied that Pierola's reliance on the trial court's actions was reasonable under the circumstances, and we accordingly invoke the equitable doctrine of unique circumstances to assert jurisdiction over this appeal.

### III.

Substantively, Pierola claims the trial court committed legal error on this record in holding that Moschonas' act of cashing the December 24 check did not constitute an accord and satisfaction barring Moschonas' claim.[7] We agree and reverse.

■ We start with a review of the applicable general principles. Accord and satisfaction is a method of discharging and terminating an existing right and constitutes a perfect defense in an action for enforcement of the previous claim. 6 ARTHUR L. CORBIN, CORBIN ON CONTRACTS § 1276 (1962). In doctrinal theory, accord and satisfaction requires both a contract, known as the accord, and performance of that contract, known as the satisfaction. *Id.* Often, accord and satisfaction arises as a defense when one party tenders a check to the other that contains the phrase "payment in full" or other words to that effect. *Id.* at n. 3. In cases like this, the debtor's act of cashing the check constitutes both the acceptance of the accord and its satisfaction. *Id.* § 1279. Thus, "[w]here the amount due is in dispute, and the debtor sends cash or check for less than the amount claimed, clearly expressing his intention that it is sent as a settlement in full, and not on account or in part payment, the retention and use of the money or cashing of the check is

almost always held to be an acceptance of the offer operating as full satisfaction." *Id.* Accord and satisfaction is an affirmative defense with the burden of proof on its proponent. *Id.* § 1280.

■ As we most recently have articulated the requirements in this jurisdiction, an accord and satisfaction is a valid affirmative defense to a breach of contract claim where there is proof of: (1) a legitimately disputed or unliquidated claim, (2) a mutual agreement that the debtor will pay and the creditor will accept something other than the original amount due in satisfaction of the disputed claim, and (3) the actual giving and taking of the agreed upon substitution. *Stinson v. Mueller*, 449 A.2d 329, 331–32 (D.C.1982). However, the accord and satisfaction need not be explicit, but will be implied from the silent act of cashing a check containing a notation of payment in full. *Rustler's Steak House v. Environmental Assocs., Inc.*, 327 A.2d 536, 539 (D.C.1974); *Westminster Investing Corp. v. Equitable Assurance Soc'y*, 143 U.S.App. D.C. 238, 241 n. 2, 443 F.2d 653, 656 n. 2 (1970); *Pugh v. Long*, 61 U.S.App. D.C. 156, 157, 58 F.2d 882, 883 (1932). In fact, even if the creditor affirmatively rejects the debtor's offer of accord and satisfaction, the accord and satisfaction will still be effective if the creditor proceeds to cash the check. *Laganas v. Installation Specialties, Inc.*, 291 A.2d 187, 189 (D.C.1972). In this sense no "meeting of the minds" is required, because the creditor's "action speaks louder than his words." *Id.* Thus, we have held that accord and satisfaction operates even when the creditor obliterates the "paid in full" notation before negotiating the check. *Id.* In short, the creditor cannot have it both ways. If he takes the satisfaction, he is bound by the accord. Where the underlying facts are not in dispute, the existence of an accord and satisfaction is determined as a matter of law. *Barrett v. Air Brakes & Controls, Inc.*, 130 A.2d 310, 311 (D.C.Mun.App.1957).

The trial court found that on December 24, 1985 Pierola wrote Moschonas a check for

---

7. Pierola also alleges several other errors which we need not reach in light of our disposition on this issue.

$5,000. On the front of the check Pierola wrote "paid in full." Moschonas immediately cashed the check. These findings are supported by the record. Moschonas' act of cashing the check is clearly sufficient to meet the second and third prongs of *Stinson* under our precedent. Therefore, the existence of accord and satisfaction in this case must turn on whether the first prong of *Stinson* is met, *i.e.* whether Moschonas' claim was "legitimately disputed or unliquidated."

■ We have phrased the requirement that a claim be legitimately disputed or unliquidated in a variety of ways over the years. *See Stinson, supra,* 449 A.2d at 331 ("legitimately disputed or unliquidated"); *Town Ctr. Management Corp. v. Chavez,* 373 A.2d 238, 243 (D.C.1977) ("unliquidated or honestly in dispute"); *Rustler's Steak House, supra,* 327 A.2d at 538–39 ("honest dispute," "disputed"); *Laganas, supra,* 291 A.2d at 188 ("unliquidated or under bona fide dispute"); *Voight & McMakin Air Conditioning, Inc. v. Property Redevelopment Corp.,* 276 A.2d 239, 242 (D.C.1971) ("unliquidated and in dispute," "bona fide dispute"). Whatever its formulation, this prerequisite of accord and satisfaction springs from the basic requirement of consideration in contract formation. An accord is a contract, and like all contracts, a valid accord requires consideration. COR-BIN, *supra* § 1276. Both at common law and today, part payment by a debtor of a total debt fixed in amount and presently and indisputably due is not considered sufficient detriment to support a promise by the creditor to discharge the entire amount due. JOHN D. CALAMARI & JOSEPH M. PERILLO, CONTRACTS § 4–10 (3d ed.1987); *Voight & McMakin, supra,* 276 A.2d at 241. This is because the debtor's part satisfaction of such a fixed debt cannot constitute consideration under the pre-existing duty rule. CALAMARI & PERILLO, *supra* § 4–10. Claims that are undisputed as to their existence and where the amount due has been agreed upon or can be precisely determined are considered "liquidated." *Id.* § 4–11. "On the other hand, if there is a dispute as to liability or the amount due or even as to some other question, for example the method of payment, the claim is generally said to be unliquidated even if a party's assertion is incorrect provided that the assertion is made in good faith." *Id.* Thus, part payment of a claim is consideration for an accord where the claim is incapable of ready numerical valuation or disputed either as to amount or underlying liability. *See id.; Voight & McMakin, supra,* 276 A.2d at 242.

The trial court denied Pierola's accord and satisfaction defense because, in its view, in order for the principles of accord and satisfaction to apply "there must be a mutual acknowledgment of the underlying debt and a bona fide dispute as to its amount for the cashing of the check to operate as a settlement." The court apparently denied the accord and satisfaction defense because it treated Pierola's denial of the existence of the September 6 contract as a failure to acknowledge the underlying debt.[8]

■ However, the trial court's grafting of a requirement that there be "a mutual acknowledgment of the underlying debt" onto the accord and satisfaction analysis was legal error. As already indicated, and contrary to the view of the trial court, it is not necessary for the parties to mutually acknowledge the underlying debt and to dispute only its amount for accord and satisfaction to operate. Accord and satisfaction can operate anytime the underlying claim is disputed *either* as "to the amount due *or* as to the debtor's liability." *Voight & McMakin,*

---

8. In a subsequent order denying Pierola's motion for reconsideration, the trial court appears to suggest that it was impermissible for Pierola to take the alternate positions that (1) there was no contract, and (2) that even if there was, it was discharged by accord and satisfaction, because the first position was based on a falsehood. This suggestion appears to be basically a restatement of the court's previous holding that a valid accord and satisfaction requires an acknowledgment of liability on the underlying debt, and because Pierola denied such liability, he could not properly claim accord and satisfaction. As a general matter, parties are permitted to take inconsistent positions under our rules. *See* Super. Ct. Civ. R. 8(e)(2); 5 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE, § 1283 (2d ed.1990). Appellee does not argue to us or in any Rule 11 motion or the like that this cannot be the case when one of the alternate positions turns out to be based on a falsehood. Accordingly, we express no opinion on that issue here.

*supra,* 276 A.2d at 242 (emphasis added); CALAMARI & PERILLO, *supra* § 4–11. Accordingly, Pierola could avail himself of the affirmative defense of accord and satisfaction despite the fact that he denied the existence of the underlying profit-splitting contract of September 6, 1985: indeed, the fact that he denied liability under that contract actually manifested a dispute as to "the debtor's liability." [9]

We turn then to the further requirement that the claim be "legitimately" disputed, or, as we have said elsewhere, that the dispute be bona fide or honest. Moschonas argues that accord and satisfaction cannot operate on the facts of this case because the trial court found that Pierola had lied in his testimony at trial regarding the profit-splitting contract.[10] However, the requirement that a dispute be legitimate, bona fide or honest focuses not on the propensity of the parties to prevaricate, but rather on the basis for disputing the claim at the time the accord and satisfaction operates. As Professor Corbin puts it:

> When a claim is disputed in good faith by the obligor, its validity may properly be described as doubtful, at least in most cases. But the existence of such a dispute does not make the claim any the less a valid one. A money debt is due even though the debtor thinks he has paid it. Yet the honest dispute is sufficient to cause a part performance of the obligor's duty to be operative as full satisfaction, if so received by the obligee. In order to have this effect, however, it is necessary that the obligor's denial of the validity of the claim shall be made in good faith. If so denied, the claim is described as doubtful and unliquidated. But the debtor's mere refusal to pay the claim does not make it an unliquidated claim, if his refusal is arbitrary and known by him to have no just basis. In such a case his payment of less than the amount claimed does not

operate as accord and satisfaction, even though it is so tendered and received. The reason for this is that he has acted in bad faith and that social policy is better served by denying full satisfaction. It is generally said that his payment, under these circumstances, is not a sufficient consideration for the creditor's agreement.

CORBIN, *supra* § 1287. The good faith requirement thus is concerned not so much with the subjective moral character of the debtor but rather the requirement of consideration. If there is an objective reasonable basis for the debtor's disputing his obligation to pay, whether in liability or amount, he is giving up something by making a part payment in full satisfaction of the disputed claim and thus provides objective consideration. In such a case, the inquiry need go no further; the dispute is "legitimate." Where there is no reasonable basis for the debtor's disputing his duty to pay the full claimed amount, where the debtor's refusal is objectively arbitrary, then subjective good faith may come into play. If the debtor honestly but completely in error believes that a just basis exists for his refusal to pay, that belief is sufficient to provide the requisite consideration. If, on the other hand, the debtor's refusal is objectively arbitrary and in addition "known by him to have no just basis," then the debtor gives up nothing by partial payment in performance of a known pre-existing duty and the attempted accord and satisfaction fails for want of consideration. The claim in that case is not "legitimate" in any sense.

We deal here with the issue of consideration and the making of a contract, where the law has been particularly wary about entering into an examination of motives and other subjective elements. For example, courts have long refused to inquire into the fairness of a bargain by examining the adequacy of consideration. *See* CALAMARI & PERILLO, *su-*

---

9. Operation of this general principle may be seen in the familiar example of tort claim settlement agreements where the alleged tortfeasor denies any admission of liability. *Cf.* CORBIN, *supra* § 1278.

10. In the case before us, both parties were untruthful in testifying about matters relating to the

accord and satisfaction. Indeed, Moschonas' untruth was more directly related to the immediate events related to that issue than Pierola's. In light of our resolution of the issue, we need not explore the effect of the mutual lack of truthfulness on the application of the good faith requirement.

*pra* § 4–4. Instead of relying on vague and subjective notions of good faith, courts have instead insisted on objective evidence of fraud, duress, overreaching, undue influence or mistake before setting aside allegedly unfair contracts. *Id.*

■ With these considerations in mind, we turn to the case before us and its claim of accord and satisfaction. Here, Moschonas asserts that Pierola acted in bad faith because he merely "feigned disagreement" in order to assert an otherwise baseless accord and satisfaction defense. Because the essential facts are undisputed or resolved by the trial court, we decide the issue as a matter of law. *Barrett, supra,* 130 A.2d at 311. At the time of the Christmas Eve check the parties had been in a business relationship for several months. During the period from August to November Moschonas had received over a dozen checks totalling over $16,000 drawn on both payroll and non-payroll accounts, despite the fact that a profit-splitting contract was entered into in early September. The parties had had a heated disagreement regarding whether to sandblast or scrape the South Capitol Street Bridge, and as a result of that disagreement Moschonas had walked off the job before it was completed and not returned. These facts gave Pierola a legitimate basis to dispute Moschonas' claim to a flat 40% of the profits on both the bridge and tower contracts. Moreover, Moschonas himself admitted that when Pierola gave him the check on December 24, 1985 "[I was] trying to negotiate with him to show me how much money I had coming to me." That Pierola may have later lied about the contract is not controlling. There was at the time of the

alleged accord and satisfaction a legitimate basis for the dispute. Accordingly, applying the legal principles set forth above the record here compels the conclusion that at the time of the Christmas Eve check the extent of Pierola's obligation to Moschonas was legitimately disputed, and that Moschonas' act of cashing the $5,000 check marked "paid in full" constituted a valid accord and satisfaction.

Moschonas also argues that even if the Christmas Eve check constituted an accord and satisfaction, it is unclear that it covered all Pierola's obligations under both the tower and bridge contracts. Moschonas suggests that the check resulted in him being "paid in full" on only one of the contracts or only on payroll obligations. Moschonas' argument is refuted by his own testimony at trial, however, where he acknowledged that the Christmas Eve check was "payment on the agreement that we have from the monies he had coming to him" on "the water tanks and the bridges." Thus, it seems clear that at the time the check was tendered Moschonas understood that it covered Pierola's obligation under both the tower and bridge contracts.

Accordingly, the judgment of the trial court must be

*Reversed.*