Dae–Seok SO and Joon Hee So, d/b/a Tenth Street Café, Appellants,

v.

514 10ᵀᴴ STREET ASSOCIATES, L.P., Appellee.

No. 01–CV–1301.

District of Columbia Court of Appeals.

Argued June 19, 2003.

Decided Nov. 6, 2003.

---

Gary K. Bahena, Washington, DC, for appellants.

Daniel A. Brown, for appellee.

Before STEADMAN and SCHWELB, Associate Judges, and NEBEKER, Senior Judge.

NEBEKER, Senior Judge:

This is an appeal from a judgment of possession of the first floor in the building located at 514 10th Street, Northwest, and for rent due and owing and other expenses. The tenants advance three argu-

ments. First, the tenants argue that the landlord's cashing of a check settled the matter through accord and satisfaction. Second, they argue that the landlord did not furnish the tenants with the requisite notice and opportunity to cure the default as required by the lease. Finally, the tenants argue that they were entitled to subpoena and compel production of certain documents for use at trial where pre-trial discovery was denied on grounds of untimeliness. Documents requested included correspondence between the landlord and a third party, Chiung Ga Chen (a.k.a. Peter Chen), whom the tenants claim they assigned the property to with the landlord's approval. We affirm.

## I. Accord and Satisfaction

We begin our analysis by noting that we review *de novo* a trial court's conclusions of law, *e.g.*, accord and satisfaction. *Bingham v. Goldberg, Marchesano, Kohlman, Inc.*, 637 A.2d 81, 89 (D.C. 1994). "Accord and satisfaction is a method of discharging and terminating an existing right and constitutes a perfect defense in an action for enforcement of the previous claim." *Pierola v. Moschonas*, 687 A.2d 942, 947 (D.C.1997) (citing 6 ARTHUR L. CORBIN, CORBIN ON CONTRACTS § 1276 (1962)). In doctrinal theory, accord and satisfaction requires both a contract, known as accord, and a performance of that contract, known as the satisfaction. *Id.* Often accord and satisfaction arises as a defense when one party tenders a check to the other that contains the phrase "payment in full" or other words to that effect. *Id.* In cases like this, the creditor's act of cashing the check constitutes both the acceptance of the accord and its satisfaction. *Id.* Thus, "where the amount due is in dispute, and the debtor sends cash or check for less than the amount claimed, clearly expressing the intention that it is sent as a settlement in full, and not on

account or in part payment, the retention and use of the money or cashing of the check is almost always held to be an acceptance of the offer operating as full satisfaction." *Id.* Accord and satisfaction is an affirmative defense with the burden of proof on the proponent. *Id.* This court has stated that "an accord and satisfaction is a valid affirmative defense to a breach of contract claim where there is proof of: (1) a legitimately disputed or unliquidated claim, (2) a mutual agreement that the debtor will pay and the creditor will accept something other than the original amount due in satisfaction of the disputed claim, and (3) the actual giving and taking of the agreed upon substitution." *Id.*

The trial court found that no agreement had been reached. In so finding, the court found that the March 12th letter contained two provisions that are at odds with one another. The letter begins with the proviso that: "Enclosed please find the check for $32,000. Cashing the check represents confirmation of the settlement reached last week as follows . . . ." The letter then ends with the following proviso. "Assuming the foregoing accurately reflects our agreement and settlement, please sign below and fax your signature back to me." The cashed check contained the notation "514 10th St. settlement 1st pay." The trial judge found that although the check was cashed, the letter was neither signed or fax returned. Instead counsel for both parties continued negotiations via e-mails dated March 20, 2001. The trial court found that the e-mails revealed that the parties had not reached an agreement on the terms of the settlement. The trial court also relies on the affidavit of plaintiff's former counsel of record at the time, which avers that no agreement was reached between the parties. Finally the trial court states that the check was unlike the checks in other cases

where accord and satisfaction was disputed. The check does not contain a memo indicating payment in full. The trial court found the notation "1st pay" to mean the first of more than one payment to follow. Under these facts the trial court found that the standard outlined in *Pierola* had not been met. This factual conclusion is supported by the evidence and correctly gives rise to the legal holding that there was no accord and satisfaction. While an accord and satisfaction "need not be explicit, but [may] be implied from the silent act of cashing a check containing a notation of payment in full," *id.*, that implication cannot be drawn here. The check did not bear the notation "payment in full" or other words to that effect. There was no "mutual agreement that the debtor will pay and the creditor will accept something other than the original amount due in satisfaction of the disputed claim" that is a prerequisite for the doctrine of accord and satisfaction to operate. *Pierola*, 687 A.2d at 947. Further negotiations ensued after the receipt of the March 12th letter, meaning the original offer was no longer on the table.[1] Moreover, the amount of the check was not even equal to the undisputed amount in controversy, and for that reason could not operate as an accord and satisfaction. *Id.* at 948 (citations omitted).

## II. Notice

■ The tenants' second argument is that there was not strict compliance with the notice provisions, specifically the tenants claim they did not receive the initial notices by "registered or certified" mail and in fact did not receive the notices at all. They state that tenants were entitled to have personally received a default notice

before the landlord could recapture previously discounted monthly rent. The trial court found that in looking at both the original lease and the second assignment the word "receipt" meant constructive receipt. The trial court found that when the complete universe of the contract is read the following are the reasonable expectations: (1) the landlord could not expect to recapture any previously discounted monthly rent until he sent notice of default and allowed the tenant 15 days to cure; (2) the tenant could not expect to be liable for the recaptured rent until that notice was sent to the address which he provided to the landlord. In sum, the bargained-for exchange was for the landlord to provide notice of default and for the tenant to have the default notice arrive at the address which he provided.

The trial court found that the landlord sent notices to the tenant at the premises in September, October, November and December of 2000. All of these notices were sent by regular mail and none was returned to the sender. The trial court found that they were received at the leased premises. The trial court also found that tenant had actual notice of the default in November of 2000. The trial court further found that tenant received written notice of the default in advance of the second complaint filed in February 2001 by the filing of the first complaint in December of 2000. On December 14, 2000, landlord's counsel sent default notice to tenants by certified mail, return receipt, to the premises and the letter was returned to sender by the post office with the addressee indicated as "UNKNOWN."[2]

---

1. *See* RESTATEMENT (SECOND) OF CONTRACTS § 39 (1981): "[a]n offeree's power of acceptance is terminated by his making a counter-offer, unless the offeror has manifested a contrary intention or unless the counter-offer manifests a contrary intention of the offeree."

2. The trial court thought the dictum in *Utilities Eng'g Institute v. Bendall*, 84 A.2d 423

There are no provisions in the original lease or the amended leases saying the notice provisions or any other provisions are to be "strictly" complied with or construed. This court adheres to the presumption that letters mailed through the United States Post Office are delivered and received at the address sent. *McQua-ter v. Aetna Ins. Co.*, 287 A.2d 821, 823 (D.C.1972) (citation omitted). Furthermore, under the facts presented the tenants received actual notice of the default from landlord's November 15 telephone call. While written notice is preferable to oral notice because the latter raises difficulties of proof,[3] it is clear that the tenants did act upon the oral notice: "[t]he Tenants immediately contacted Chen and, when Chen refused to honor his obligations to pay the rent, the Tenants caused Chen to vacate the Premises on or about January 15, 2001." Once tenants did not cure within fifteen days of receiving notice, the retroactive rental increase took effect. Considering the totality of the circumstances here, we are satisfied that the trial court did not err in finding that the tenants were served with adequate notice to impose liability for the increased rent.

### III. Motion to Compel

As to tenants' final argument, they requested but were denied pre-trial discovery of several documents because the trial court found the request to be untimely. The tenants then served the landlord first with subpoenas pursuant to Super. Ct. Civ. R. 45 for the production of documents and subsequently with a Motion to Compel requesting the same materials that had previously been denied in pre-trial discovery. The trial court denied the Motion to Compel without a hearing. We review the denial of a Motion to Compel for abuse of discretion resulting in prejudice. *Haynes v. District of Columbia*, 503 A.2d 1219, 1224 (D.C.1986) (per curiam).

Our Rule 45 substantially mirrors the federal rule. Where the local rule and the federal rule contain the same language, "we will look to federal court decisions interpreting the federal rule as persuasive authority in interpreting the local rule." *Montgomery v. Jimmy's Tire & Auto Ctr.*, 566 A.2d 1025, 1027 (D.C.1989) (citations omitted). Numerous courts have concluded that Rule 45 subpoenas should not be used after the discovery deadline to obtain documents that could have been obtained through discovery. *See, e.g., Alper v. United States*, 190 F.R.D. 281, 283–84 (D.Mass.2000); *Dreyer v. GACS, Inc.*, 204 F.R.D. 120, 122 (N.D.Ind.2001); *Grant v. Otis Elevator Co.*, 199 F.R.D. 673, 675 (N.D.Okla.2001); *FTC v. Netscape Communications Corp.*, 196 F.R.D. 559, 561

---

(D.C.1951) to be illustrative. In *Utilities*, a case involving markedly different facts, this court opined that where the contract at issue between a student and a correspondence school required a letter of cancellation by registered mail and the letter was admittedly received by the school, to deem such notice ineffective because the letter "came by ordinary instead of registered mail would be to erect an artificial barrier having no foundation in reason or law." *Id.*

**3.** *Cf. Associated Estates, LLC v. Caldwell*, 779 A.2d 939, 944 (D.C.2001) (requiring strict compliance with registered mail notice for tax lien property sales):

> The use of certified or registered mail instead of ordinary mail increases the probability that the post office delivers the notice to the proper party. In addition, the use of certified or registered mail results in an unambiguous record of whether the requisite notification has occurred or not. The creation of such a record helps to prevent expensive and time-consuming disputes over notice, such as the dispute in this very case.

(N.D.Cal.2000); *Marvin Lumber & Cedar Co., v. PPG Indus., Inc.,* 177 F.R.D. 443, 443–44 (D.Minn.1997); *Mortgage Info. Servs., Inc. v. Kitchens,* 210 F.R.D. 562 (W.D.N.C.2002). Therefore, whether tenants' attempt to procure documents after the close of discovery is viewed as a sub-poena or a motion to compel, we find no abuse of discretion.

*Affirmed.*